SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
BRADLEY MANEWITH (*pro hac vice* forthcoming)
(bmanewith@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

*Attorneys for Plaintiffs Nhu Weinberg,*
*Samantha Gongora, Julia Steele,*
*Omolade Ogunsanya, Nanci Sills,*
*Krista Bessinger, and Ikuhiro Ihara,*
*on behalf of themselves and others*
*similarly situated*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| NHU WEINBERG, SAMANTHA GONGORA, JULIA STEELE, OMOLADE OGUNSANYA, NANCI SILLS, KRISTA BESSINGER, IKUHIRO IHARA, and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TWITTER, INC., and  X CORP., <br><br> Defendants | **CLASS ACTION COMPLAINT AND JURY DEMAND** <br><br> 1. VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. §2601, *et seq.* <br> 2. SEX DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.* <br> 3. RACE DISCRIMINATION IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.* <br> 4. DISCRIMINATION IN VIOLATION OF THE ADEA, 29 U.S.C. § 621, *et seq.* |

## I.    __INTRODUCTION__

1.      This case is brought by Plaintiffs Nhu Weinberg, Samantha Gongora, Julia Steele, Omolade Ogunsanya, Nanci Sills, Krista Bessinger, and Ikuhiro Ihara, on behalf of themselves and others similarly situated, against Defendants Twitter, Inc. and X Corp. (collectively, "Twitter"), for discrimination and violations of the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, related to Plaintiffs' separations from employment with Twitter during the chaotic days following multi-billionaire Elon Musk's purchase of the company.

2.      Plaintiff Weinberg, who had taken family leave in recent years, and was separated from Twitter shortly after returning from a medical leave, brings claims on behalf of herself and other similarly situated employees who have taken or applied to take a family or medical leave, for violations of the FMLA, challenging the company's termination, or constructive termination, of employees who had taken, or applied to take, a medical or family leave of absence.

3.      Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger, who are female, bring claims of discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, challenging their terminations following Elon Musk's acquisition of the company as the product of unlawful sex discrimination against female employees.

4.      Plaintiff Ogunsanya, who is Black, brings a claim of discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*, challenging his termination following Elon Musk's acquisition of the company as the product of unlawful race-based discrimination against Black employees.

5.      Plaintiffs Bessinger and Ihara, who are age fifty (50) or older, bring claims of discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, challenging their terminations following Elon Musk's acquisition of the company as the product of unlawful age discrimination against employees age fifty (50) or older.

6.      As described in further detail below, shortly after Elon Musk completed his purchase of Twitter, he immediately began laying off well more than half of its workforce.

7.      Twitter's mass termination has impacted employees in a number of protected categories to a much greater degree than other employees.  These categories include female, Black, and older employees, as well as employees who had recently taken or were preparing to take family or medical leave.

8.      Plaintiffs thus file this complaint alleging sex, race, and age discrimination claims, as well as class action claims for violations of the FMLA.[1]

## II.   **PARTIES**

9.      Plaintiff Nhu Weinberg is an adult resident of Piedmont, California, who worked for Twitter from October 15, 2012, until November 4, 2022.  She was employed by Twitter as a Staff Software Engineer. Throughout her employment with Twitter, Weinberg's performance met the Company's expectations.

10.     Plaintiff Samantha Gongora is an adult resident of Boulder, Colorado, who worked for Twitter from February 1, 2012, until November 4, 2022.  She was employed by Twitter as a Software Engineer II. Throughout her employment with Twitter, Gongora's performance met the Company's expectations.

11.     Plaintiff Julia Steele is an adult resident of Dallas, Texas, who worked for Twitter from September 2018 until November 4, 2022.  She was employed by Twitter as the Head of

---

[1]     Similar class discrimination claims have already been filed on behalf of female employees in Strifling et al v. Twitter, Inc., C.A. No. 22-cv-7739 (N.D. Cal.), and older employees in Zeman v. Twitter, Inc., C.A. No. 23-cv-01786 (N.D. Cal.).  Another class discrimination case, Borodaenko et al v. Twitter, Inc., No. 22-cv-7226 (N.D. Cal.), was also filed on behalf of disabled employees and employees raising FMLA claims.  However, the lead plaintiff in the Borodaenko case who brought an FMLA claim was bound by an arbitration agreement and thus is pursuing his claim in arbitration.  The class FMLA claim raised here thus effectively replaces that class claim from the Borodaenko case.

CLASS ACTION COMPLAINT AND JURY DEMAND

Global Internal Communications. Throughout her employment with Twitter, Steele's performance met the Company's expectations.

12.     Plaintiff Omolade Ogunsanya is an adult resident of San Francisco, California, who worked for Twitter from September 14, 2020, until November 4, 2022. He was employed by Twitter as the Curation Desk Lead and also served as the Global Co-Chair of Blackbirds, an employee resource group for African American employees. Throughout his employment with Twitter, Ogunsanya's performance met the Company's expectations.

13.     Plaintiff Nanci Sills is an adult resident of Palmetto Bay, Florida, who worked for Twitter from September 6, 2013, until November 4, 2022.  She was employed by Twitter as the Director of Market Research. Throughout her employment with Twitter, Sills's performance met the Company's expectations.

14.     Plaintiff Krista Bessinger is an adult resident of Piedmont, California, who worked for Twitter from October 28, 2013, until November 4, 2022.  She was employed by Twitter as the Vice President of Investor Relations. Throughout her employment with Twitter, Bessinger's performance met the Company's expectations.

15.     Plaintiff Ikuhiro Ihara is an adult resident of New York, New York, who worked for Twitter from October 2, 2012, until November 23, 2022.  He was employed by Twitter as a Staff Machine Learning Engineer. Throughout his employment with Twitter, Ihara's performance met the Company's expectations.

16.     Defendant Twitter, Inc. is a Delaware corporation, headquartered in San Francisco, California.

17.     Defendant X Corp. is a Nevada corporation, headquartered in San Francisco, California.

18.     In or about March 2023, Twitter merged with X Corp., and as a result Twitter and X Corp. are a single entity. X Corp. has successor liability for Twitter's unlawful acts.  Twitter and X Corp. are referred to herein as "Twitter".

## III.   JURISDICTION

19.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1331, as it is a civil action arising under the Constitution, laws, or treaties of the United States.

20.     This Court has personal jurisdiction over Twitter, as it is headquartered in this District and conducts substantial business operations in this District.

## IV.   STATEMENT OF FACTS

21.     Twitter is a social media company that used to employ thousands of people across the United States.

22.     In April 2022, it was announced that multi-billionaire Elon Musk would be purchasing the company.

23.     Following Elon Musk's purchase of Twitter in late October 2022, Musk immediately began a mass layoff that affected well more than half of Twitter's workforce.  See Kate Conger, Ryan Mac, and Mike Isaac, Confusion and Frustration Reign as Elon Musk Cuts Half of Twitter's Staff, NEW YORK TIMES (November 4, 2022), https://www.nytimes.com/2022/11/04/technology/elon-musk-twitter-layoffs.html.

24.     The decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualifications, experience, and abilities.  Indeed, decisions regarding laying off thousands of employees were made in a period of just days after Musk's acquisition of the company.

25.     Most laid off employees (including all Plaintiffs other than Ihara) were notified of their layoff on November 4, 2022.  Other employees were notified of their layoffs in the following weeks, including Plaintiff Ihara, who was notified on November 23, 2022.

26.     Reportedly, the layoff decisions were made quickly by a small group of managers, under close supervision by Musk.  Some of these managers were brought in from other companies owned by Musk (such as Tesla), who did not have much, if any, knowledge about Twitter's operations.  See Lora Kolodny, <u>Elon Musk has pulled more than 50 Tesla employees into his Twitter takeover</u>, CNBC (November 1, 2022), [Elon Musk has pulled more than 50 Tesla employees into Twitter (cnbc.com)](#).

27.     These layoffs resulted in a significantly greater proportion of women being laid off than men; a greater proportion of older employees being laid off than younger employees; and Black employees being laid off than employees of other races.  In addition, employees who had taken, or were preparing to take, family or medical leave were more likely to be laid off than other employees.

## A.     FMLA Violations

28.     Plaintiff Nhu Weinberg worked as a Staff Software Engineer.  She had taken family or medical leave in the years leading up to her layoff to care for her child, who is disabled, as well as to care for her own medical conditions.  She also took medical leave just prior to Musk's purchase of the company.

29.     Weinberg was informed of her layoff on November 4, 2022, less than a month after returning from 10 weeks of FMLA leave.

30.     The layoffs at Twitter following Musk's acquisition of the company had a disproportionately high impact on employees who were taking, or preparing to take, family or medical leave.   Approximately 60% of employees who were on leave at the time of the November 4, 2022, layoffs were notified that day that they were being laid off (as compared to approximately 51% of employees overall).  And most employees who were on leave were no longer employed by the company following Musk's ultimatum a couple of weeks later, in which

CLASS ACTION COMPLAINT AND JURY DEMAND

he required that employees agree by November 17, 2022, to being "extremely hardcore" and "working long hours at high intensity".

### B.   Sex Discrimination

31.     Widely circulated pictures of Twitter employees before and after the November 4, 2022, layoff raised observations about the stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition.  Rachna Manojkumar Dhanrajani, Curious case of Twitter's missing women: Before and after pictures shock the internet, Business Today  (November 21, 2022), Curious case of Twitter's missing women: Before and after pictures of Twitter office shock the internet - BusinessToday; Kanishka Sarkar, Where have all the women gone from Elon Musk's Twitter? 'Before & after' office photos shock internet, CNBC (November 21, 2022),  Where Have All The Women Gone From Elon Musk'S Twitter? 'Before & After' Office Photos Shock Internet (cnbctv18.com).

32.     The data from these layoffs bear out these observations.

33.     According to a spreadsheet showing which Twitter employees in the United States were retained and which were laid off on November 4, 2022, approximately 2,621 out of 5,134 employees were notified that day they were being laid off.

34.     Prior to the layoffs that day, Twitter employed approximately 2,234 female employees and 2,900 male employees in the United States.  Of those employees, approximately 1,271 females and 1,350 males were notified that day they were being laid off.

35.     Thus, 57% of female employees were laid off on November 4, 2022, while 47% of male employees were laid off.

36.     Not only is this a large percentage difference, but it is also extremely statistically significant.

37.     According to Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University,[2] a chi square statistical analysis reveals that this distribution in layoffs by sex is 7.3491 standard deviations away from a normal distribution.  In other words, the odds that this disparity between women and men being laid off is due only to chance is .00000000000001 (or, put another way, 9.977 out of 100 trillion).

38.     Further, the disparity between women and men being laid off cannot be explained based upon a justification that Musk intended to retain more employees in engineering-related roles.

39.     According to the spreadsheet, prior to the layoffs that day, Twitter employed approximately 863 female and 1,834 male employees in engineering-related roles in the United States.  Of those employees, approximately 507 females and 826 males were notified that day they were being laid off.  Thus, 59% of females in engineering-related roles were laid off on November 4, 2022, while 45% of male employees in engineering-related were laid off.

40.     This disparity is also extremely statistically significant.  According to Dr. Killingsworth, a chi square test reveals that this distribution in layoffs by sex is 7.6380 standard

---

[2]     A federal court has described Dr. Killingsworth's qualifications as follows:

Dr. Killingsworth is a labor economist with more than 40 years of experience and has a substantial record as an expert witness in federal and state litigation. He is the author of *Labor Supply* and *The Economics of Comparable Worth*, and has also authored numerous publications in the areas of comparable worth, pay equity, employment discrimination, and wage differentials. Also, Dr. Killingsworth has testified in front of United States Congressional Committees and the General Assembly of Pennsylvania. In addition, he has been a consultant to United States District Judge Robert L. Carter, the Canadian Department of Justice, and the United States Departments of Justice and Labor. Dr. Killingsworth graduated from the University of Michigan and received M.Phil. and D.Phil. degrees from the University of Oxford, where he was a Rhodes Scholar.

Artunduaga v. Uni. Of Chicago Med. Ctr., 2016 WL 7384432, at *2-3 (N.D. Ill. Dec. 21, 2016) (citing cases).

CLASS ACTION COMPLAINT AND JURY DEMAND

deviations away from a normal distribution.  The odds that this disparity between women and men in engineering-related roles being laid off is due only to chance is .00000000000001 (or, put another way, 1.103 out of 100 trillion).

41.    There is also a great disparity in the layoff rates between women and men in non-engineering roles.  Prior to the layoffs that day, Twitter employed approximately 1,371 female and 1,066 male employees in non-engineering-related roles in the United States.  Of those employees, approximately 764 females and 524 males were notified that day they were being laid off.  Thus, 56% of females in non-engineering-related roles were laid off on November 4, 2022, while 49% of male employees in non-engineering-related were laid off.  A chi square test performed by Dr. Killingsworth revealed that this distribution in layoffs by sex is 4.0309 standard deviations away from a normal distribution.  The odds that this disparity between women and men in non-engineering-related roles being laid off is due only to chance is .00001 (or, put another way, 2.778 out of 100 thousand).

42.    These results are summarized in the following chart:

| | | Laid off | Not laid off | Total | % laid off | Standard deviations from normal | Probability of this distribution being based on chance |
|---|---|---|---|---|---|---|---|
| ALL EMPLOYEES | Female | 1271 | 963 | 2234 | 0.57 | 7.3491 | $9.977 \times 10^{-14}$ |
| | Male | 1350 | 1550 | 2900 | 0.47 | | (9.977 chances out of 100 trillion) |
| | TOTAL | 2621 | 2513 | 5134 | | | |
| EMPLOYEES IN ENGINEERING-RELATED POSITIONS | Female | 630 | 373 | 1003 | 0.63 | 7.638 | $1.103 \times 10^{-14}$ |
| | Male | 1037 | 1113 | 2150 | 0.48 | | (1.103 chances out of 100 trillion) |
| EMPLOYEES IN NON-ENGINEERING-RELATED POSITIONS | Female | 545 | 517 | 1062 | 0.51 | 4.0309 | $2.778 \times 10^{-5}$ |
| | Male | 312 | 436 | 748 | 0.42 | | (2.778 chances out of 100 thousand) |

43.    Thus, it is clear that women were far more likely than men to be laid off from Twitter, and those differences are highly statistically significant.

44.    The fact that more women than men were laid off is not surprising given Musk's history of making sexist, demeaning, and hostile comments against women. Such comments show his discriminatory animus against women.  As Twitter's new owner and CEO, who

9
CLASS ACTION COMPLAINT AND JURY DEMAND

oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

45.     Examples of Musk's discriminatory and demeaning comments about women include his posting of tweets on Twitter in which he joked about naming a school using the acronym "TITS" and making other jokes about women's breasts.  See Chandra Steele, Elon Musk is a Misogynist and It Matters, PCMag (December 13, 2021), Elon Musk Is a Misogynist and It Matters | PCMag (quoting Musk's tweet: "Am thinking of starting new university: Texas Institute of Technology & Science"); Jon Christian, Elon Musk Deletes Sexist Tweets, The Byte (October 31, 2021), Elon Musk Deletes Sexist Tweets (futurism.com); Stock Joker on Twitter: "@ZJAyres @PhilKoopman Now deleted, but only D cups need apply https://t.co/40NBcDTonb" / Twitter); Ananya Bhattacharya, In one tweet, Elon Musk captures the everyday sexism faced by women in STEM, Quarz (November 1, 2021), Elon Musk's tweet captures everyday sexism faced by women in STEM (qz.com).

46.     Shortly before acquiring Twitter, Musk, who has been vocal about promoting women having a lot of babies (presumably disseminating the message that is more important than keeping Thier jobs), tweeted: "Being a Mom is just as important as any career."  Twitter (August 17, 2022), https://twitter.com/elonmusk/status/1559823434028400640.  Within weeks of announcing the layoffs, Musk tweeted "Testosterone rocks ngl".  Twitter (December 4, 2022), https://twitter.com/elonmusk/status/1599345615443746817

47.     More recently, Musk had the "w" on the sign of the corporate headquarters painted white so that the company's name appeared to be "Titter." See Twitter (April 9, 2023), https://twitter.com/elonmusk/status/1645266104351178752?cxt=HHwWgIC-7cGzlNUtAAAA.

C. **Race Discrimination**

48.     Black employees were also statistically more likely to be chosen for layoff on November 4, 2022, than other employees.

49.     This is not surprising given Musk's history of support for racist groups and hate speech directed at Black people, which demonstrate his discriminatory animus against Black individuals.  As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

50.     For example, Musk defended Scott Adams, the creator of the comic strip "Dilbert," after Adams called Black Americans a "hate group" and suggested that white people should "get the hell away" from them. Jordan Valinsky, <u>Elon Musk Tweets Support for Dilbert Creator after Racist Tirade</u>, CNN (February 27, 2023),

<u>https://www.cnn.com/2023/02/27/business/elon-musk-scott-adams-defense/index.html</u>.

51.     As another example, since acquiring Twitter, Musk has reinstated previously banned racists to the platform, including neo-Nazis and white supremacists. Charisma Madarang, <u>Elon Musk's 'Racist Rhetoric' Weighed by Advertisers before Meeting with Twitter CEO</u>, ROLLING STONE (April 6, 2023), <u>https://www.rollingstone.com/culture/culture-news/elon-musk-racist-rhetoric-twitter-advertisers-1234710991/</u>.

11
CLASS ACTION COMPLAINT AND JURY DEMAND

### D.     Age Discrimination

52.     Older employees (age fifty (50)) and older were also statistically more likely to be laid off from Twitter than younger employees following Musk's acquisition of the company.

53.     According to data that Twitter provided employees pursuant to the Older Workers Benefit Protection Act (OWBPA), which shows which Twitter employees in the United States were retained and which were laid off, approximately 2,686 out of 4,964 employees were notified of their layoff on November 4, 2022.

54.     Prior to the layoffs that day, Twitter employed approximately 248 employees age fifty (50) or over and 4,716 employees under the age of fifty (50) in the United States.  Of those employees, approximately 149 employees age fifty (50) or over and 2,537 employees under the age of fifty (50) were notified that day they were being laid off.

55.     Thus, 60% of employees age fifty (50) or over were laid off on November 4, 2022, while 54% of employees under the age of fifty (50) were laid off.

56.     This difference in layoff rates between employees age fifty (50) or over and under the age of fifty (50) is statistically significant.  According to Dr. Killingsworth, a chi square statistical analysis reveals that this distribution in layoffs by age is close to 2 (1.936) standard deviations away from a normal distribution.  In other words, the odds that this disparity between employees age fifty (50) or over and under age fifty (50) being laid off is due only to chance is .0529.  This level of disparity is considered significant for legal discrimination purposes.

57.     Twitter's discrimination against employees over the age of fifty (50) was willful.

58.     The fact that older employees were laid off in greater proportion than younger employees is not surprising given Musk's history of making ageist comments. Such comments show his discriminatory animus against older individuals.  As Twitter's new owner and CEO, who oversaw and closely managed the employees who were making layoff decisions and implementing his policies, Musk's discriminatory animus is imputed to Twitter.

CLASS ACTION COMPLAINT AND JURY DEMAND

59.     For example, in a 2022 interview with the CEO of the publishing company Axel Springer, Musk commented:

> I don't think we should try to have people live for a really long time. That it would cause asphyxiation of society because the truth is, most people don't change their mind, …they just die. So, if they don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them.

https://www.foxbusiness.com/lifestyle/lonely-elon-musk-humans-shouldnt-live-longer-asphyxiate-society.

## V.     EXHAUSTION OF ADMINSTRATIVE REMEDIES

60.     Plaintiffs have all filed administrative charges of discrimination with the Equal Employment Opportunity Commission and have received Right to Sue letters to pursue these claims in court.

### COUNT I

#### Family and Medical Leave Act,
#### 29 U.S.C. § 2601, *et seq.*

Plaintiff Weinberg and other employees who have taken or were prepared to take a family or medical leave have been entitled to the protections of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Under the FMLA, employees are entitled to take up to twelve weeks of unpaid leave during a twelve-month period in order to care for themselves or a spouse or child with a serious health condition, or to care for a newborn child. The FMLA prohibits employers "from interfering with, restraining, or denying the exercise of their employees' rights under the statute," and from discharging or in any other manner discriminating against "any individual for opposing any practice made unlawful by [the statute]." 29 U.S.C. § 2615.

As set forth above, Twitter's layoffs following Musk's acquisition of the company have disproportionately impacted employees like Weinberg who have taken or who were preparing to take family or medical leave. Twitter has thus violated the FMLA with respect to these employees.

## COUNT II

### Sex Discrimination in Violation of Title VII,
### 42 U.S.C. § 2000e, *et seq.*

Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger have been entitled to the protections of Title VII, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination on the basis of sex. Twitter's conduct in conducting layoffs that affected a higher proportion of women than men constitutes unlawful discrimination against Plaintiffs on the basis of sex in violation of Title VII.

## COUNT III

### Race Discrimination in Violation of Title VII,
### 42 U.S.C. § 2000e, *et seq.*

Plaintiff Ogunsanya has been entitled to the protections of Title VII, 42 U.S.C. § 2000e, *et seq.*, which prohibits discrimination on the basis of race. Twitter's conduct in conducting layoffs that affected a higher proportion of Black employees than other employees constitutes unlawful discrimination against Plaintiff on the basis of race in violation of Title VII.

## COUNT IV

### Age Discrimination in Employment Act,
### 29 U.S.C. § 621, *et seq.*

Plaintiffs Bessinger and Ihara are entitled to the protections of the ADEA, 29 U.S.C. §621, which prohibits discrimination on the basis of age. Twitter's conduct in conducting layoffs that affected a higher proportion of older employees (age fifty (50) and over) constitutes unlawful discrimination against Plaintiffs Bessinger and Ihara on the basis of age in violation of the ADEA.

## JURY DEMAND

Plaintiffs request a trial by jury on the claims asserted here.

WHEREFORE, Plaintiffs request that this Court enter the following relief:

61.     Certify this case as a class action on behalf of employees, who were laid off by Twitter following Musk's acquisition of the company who had recently taken, or were preparing to take, a family or medical leave, under the FMLA;

62.     Declare and find that Twitter is liable to Plaintiff Weinberg and other similarly situated employees, who have taken or were preparing to take a family or medical leave, under the FMLA;

63.     Declare and find that Twitter is liable to Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger for sex discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*;

64.     Declare and find that Twitter is liable to Plaintiff Ogunsanya for race discrimination under Title VII, 42 U.S.C. § 2000e, *et seq.*;

65.     Declare and find that Twitter is liable to Plaintiffs Bessinger and Ihara for age discrimination under the ADEA, 29 U.S.C. § 621, *et seq.*;

66.     Reinstate female, Black, and older employees who wish to return to their jobs, as well as employees who were terminated in violation of the FMLA;

67.     Award compensatory and any other appropriate damages under the FMLA, Title VII, and ADEA;

68.     Award emotional distress and punitive damages under Title VII;

69.     Award liquidated damages under the ADEA;

70.     Award pre- and post-judgment interest;

71.     Award reasonable attorneys' fees, costs, and expenses; and

72.     Award any other relief to which Plaintiffs and other similarly situated employees may be entitled.

                          Respectfully submitted,

                          NHU WEINBERG, SAMANTHA GONGORA,
                          JULIA STEELE, OMOLADE OGUNSANYA,
                          NANCI SILLS, KRISTA BESSINGER, IKUHIRO
                          IHARA, and others similarly situated,

                          By their attorneys,

                           /s/ Shannon Liss-Riordan
                          Shannon Liss-Riordan, SBN 310719
                          Bradley Manewith (*pro hac vice* forthcoming)
                          LICHTEN & LISS-RIORDAN, P.C.
                          729 Boylston Street, Suite 2000
                          Boston, MA 02116
                          (617) 994-5800
                          Email:  sliss@llrlaw.com; bmanewith@llrlaw.com

Dated:        August 8, 2023