MORGAN, LEWIS & BOCKIUS LLP
Eric Meckley, Bar No. 168181
eric.meckley@morganlewis.com
Brian D. Berry, Bar No. 229893
brian.berry@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001

MORGAN, LEWIS & BOCKIUS LLP
Ashlee N. Cherry, Bar No. 312731
ashlee.cherry@morganlewis.com
Kassia Stephenson, Bar No. 336175
kassia.stephenson@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Defendant
X CORP. as Successor in Interest
to TWITTER, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

NHU WEINBERG, SAMANTHA GONGORA, JULIA STEELE, OMOLADE OGUNSANYA, NANCI SILLS, KRISTA BESSINGER, IKUHIRO IHARA, and others similarly situated,

Plaintiffs,

vs.

TWITTER, INC. and X CORP.,

Defendants.

Case No. 3:23-cv-04016-AMO

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date:    March 14, 2024
Time:    2:00 p.m.
Judge:   Hon. Araceli Martinez-Olquin

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 14, 2024, at 2:00 p.m. or as soon thereafter as may be heard in Courtroom 10 on the 19th Floor of the United States Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant X Corp., on its own behalf and as successor in interest to Defendant Twitter, Inc. (hereinafter "Defendant") will, and hereby does, move this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the Complaint for failure to state a claim upon which relief can be granted, based on the following grounds:

1. Plaintiffs' first cause of action for violations under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, fails to state an individual claim, and also fails to state a class claim because the class definition is fatally uncertain, the Complaint does not allege facts sufficient to support a plausible class claim, and Plaintiff Weinberg lacks standing to assert claims on behalf of employees who were constructively discharged.

2. Plaintiffs' second cause of action for sex discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* fails to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate treatment or disparate impact claim.

3. Plaintiffs' third cause of action for race discrimination in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* fails to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate treatment or disparate impact claim.

4. Plaintiffs' fourth cause of action for discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, fails to state a claim because Plaintiffs do not allege facts sufficient to support a plausible disparate treatment or disparate impact claim.

The Motion to Dismiss is based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings on file herein and such arguments and admissible evidence as may be presented at the time of hearing.

/ / /

/ / /

/ / /

/ / /

1    Dated: February 2, 2024                    MORGAN, LEWIS & BOCKIUS LLP

2                                               By   */s/ Brian D. Berry*

3                                                    Eric Meckley
                                                     Brian D. Berry
4                                                    Ashlee Cherry
                                                     Kassia Stephenson
5
                                                     Attorneys for Defendant
6                                                    X CORP. as Successor in Interest to
                                                     TWITTER, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................................ 1

II.  THE COMPLAINT'S MATERIAL ALLEGATIONS.......................................... 1

    A.   The Plaintiffs ............................................................................................... 1

    B.   The November 4 Reduction in Force and Subsequent Layoffs .............. 1

    C.   The FMLA Allegations ............................................................................... 2

    D.   The Race Allegations .................................................................................. 2

    E.   The Gender Allegations .............................................................................. 3

    F.   The Age Allegations .................................................................................... 4

III. LEGAL STANDARD ............................................................................................... 5

IV.  ARGUMENT ............................................................................................................. 6

    A.   Plaintiff Weinberg Fails to State a FMLA Claim. .................................. 6

    B.   Plaintiff Weinberg Fails to State a FMLA Class Claim.......................... 8

        1.   The FMLA Class Definition Is Fatally Uncertain...................................... 8

        2.   The Complaint Does Not Allege a Plausible Class Claim.......................... 9

        3.   Plaintiff Lacks Standing to Assert Claims on Behalf of Employees Who Were "Constructively Discharged." .................................................. 10

    C.   The Complaint Fails to State a Claim for Race Discrimination. .......... 10

        1.   The Complaint Fails to State an Intentional Discrimination Claim.......... 10

        2.   The Complaint Fails to State a Disparate Impact Claim........................... 12

    D.   The Complaint Fails to State a Claim for Sex Discrimination. ............ 14

        1.   The Complaint Fails to State an Intentional Discrimination Claim.......... 14

        2.   The Complaint Fails to State a Disparate Impact Claim........................... 15

    E.   The Complaint Fails to State a Claim for Age Discrimination............. 16

        1.   The Complaint Fails to State an Intentional Discrimination Claim.......... 16

        2.   The Complaint Fails to State a Disparate Impact Claim........................... 18

V.   CONCLUSION ........................................................................................................ 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO (AFSCME) v. State of Wash.*,
    770 F.2d 1405 (1985) ................................................................................................. 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 5, 9

*Bachelder v. Am. W. Airlines, Inc.*,
    259 F.3d 1112 (9th Cir. 2001) ................................................................................. 6, 7

*Banaga v. Gov't Emps. Ins. Co.*,
    2019 WL 2451418 (S.D. Cal. June 12, 2019) ............................................................. 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 5, 6, 13

*Carpenter v. Boeing Co.*,
    456 F.3d 1183 (10th Cir. 2006) ................................................................................... 7

*Cornwell v. Electra Cent. Credit Union*,
    439 F.3d 1018 (9th Cir. 2006) ................................................................................... 10

*Criley v. Delta Air Lines, Inc.*,
    119 F.3d 102 (2d Cir. 1997) ...................................................................................... 18

*Davis v. D.C.*,
    925 F.3d 1240 (D.C. Cir. 20019) ......................................................................... 13, 16

*Durante v. Qualcomm, Inc.*,
    144 F. App'x. 603 (9th Cir. 2005) ............................................................................. 13

*E.E.O.C. v. McDonnell Douglas Corp.*,
    191 F.3d 948 (8th Cir. 1999) ..................................................................................... 18

*Enoh v. Hewlett Packard Enter. Co.*,
    2018 WL 3377547 (N.D. Cal. July 11, 2018) ...................................................... 14, 16

*Fresquez v. County of Stanislaus*,
    2014 WL 1922560 (E.D. Cal. May 14, 2014) ................................................ 11, 14, 17

*Freyd v. Univ. of Oregon*,
    990 F.3d 1211 (9th Cir. 2021) .............................................................................. 14, 16

*Gilbreath v. Brookshire Grocery Co.*,
    400 F. Supp. 3d 580 (E.D. Tex. Aug. 21, 2019) ................................................. 13, 16

*Goel v. Coal. Am. Holding Co. Inc.*,
    2011 WL 13128300 (C.D. Cal. July 5, 2011) .............................................................. 8

*Gray v. Golden Gate Nat. Recreational Area*,
　279 F.R.D. 501 (N.D. Cal. 2011) ................................................................................. 8

*Gross v. FBL Fin. Servs., Inc.*,
　557 U.S. 167 (2009) ..................................................................................................... 17

*Hemmings v. Tidyman's Inc*.,
　285 F.3d 1174 (9th Cir. 2002) ...................................................................................... 7

*Int'l Bhd. of Teamsters v. U.S.*,
　431 U.S. 324 (1977) ..................................................................................................... 12

*Jue v. Costco Wholesale Corp.*,
　No. C 10-00033-WHA, 2010 WL 889284 (N.D. Cal. Mar. 11, 2010) ................................... 10

*Kennedy v. Bank of Am., N.A.*,
　2012 WL 1458196 (N.D. Cal. Apr. 26, 2012) ............................................................. 16

*Kinnally v. Rogers Corp*.,
　2009 WL 597211 (D. Ariz. Mar. 9, 2009) .................................................................. 18

*Kobayashi v. McMullin*,
　2022 WL 3137958 (C.D. Cal. May 31, 2022), *report and recommendation*
　*adopted as modified*, 2022 WL 3226169 (C.D. Cal. Aug. 8, 2022) .......................... 16

*Lowe v. Commack Union Free Sch. Dist*.,
　886 F.2d 1364 (2d Cir. 1989) ...................................................................................... 18

*Mahler v. Jud. Council of California*,
　67 Cal. App. 5th 82 (2021) .......................................................................................... 14

*Marchioli v. Pre-Employ.com, Inc.*,
　2017 WL 8186761 (C.D. Cal. June 30, 2017) ............................................................. 16

*McDonnell Douglas Corp. v. Green*,
　411 U.S. 792 (1973) ..................................................................................................... 10

*Meacham v. Knolls Atomic Power Lab.*,
　554 U.S. 84 (2008) ....................................................................................................... 12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
　521 F.3d 1097 (9th Cir. 2008) ....................................................................................... 6

*Merrick v. Farmers Ins. Grp*.,
　892 F.2d 1434 (9th Cir. 1990) ......................................................................... 12, 15, 17

*Mish v. TForce Freight, Inc.*,
　2021 WL 4592124 (N.D. Cal. Oct. 6, 2021) ........................................................... 6, 10

*Montoya v. City of San Diego*,
　2021 WL 2350927 (S.D. Cal. June 9, 2021) ................................................................. 8

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) ........................................................................... 5

*Nesbit v. Pepsico, Inc.*,
    994 F.2d 703 (9th Cir. 1993) ......................................................................... 12

*Olson v. United States by & through Dep't of Energy*,
    980 F.3d 1334 (9th Cir. 2020) ......................................................................... 6

*Paige v. California*,
    233 F. App'x 646 (9th Cir. 2007) ................................................................. 19

*Pottenger v. Potlach Corp.*,
    329 F.3d 740 (9th Cir. 2003) ......................................................................... 10

*Rudwall v. Blackrock, Inc.*,
    2011 WL 767965 (N.D. Cal. Feb. 28, 2011) ................................................ 18

*Sanders v. City of Newport*,
    657 F.3d 772 (9th Cir. 2011) ........................................................................... 6

*Schechner v. KPIX-TV*,
    2011 WL 109144 (N.D. Cal. Jan. 13, 2011) ................................................ 18

*Senne v. Kansas City Royals Baseball Corp.*,
    315 F.R.D. 523 (N.D. Cal. 2016) ................................................................... 8

*Smith v. City of Jackson*,
    544 U.S. 228 (2005) ...................................................................................... 12

*Smith v. Tennessee Valley Auth.*,
    924 F.2d 1059 (6th Cir. 1991) ....................................................................... 18

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ........................................................................... 5

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ......................................................................... 6

*Stender v. Lucky Stores, Inc.*,
    1991 WL 127073 (N.D. Cal. Apr. 4, 1991) ................................................... 7

*Stockwell v. City & Cnty. of San Francisco*,
    749 F.3d 1107 (9th Cir. 2014) ....................................................................... 12

*Stout v. Potter*,
    276 F.3d 1118 (9th Cir. 2002) .................................................. 12, 13, 14, 16

*Tex. Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*,
    576 U.S. 519 (2015) ................................................................................ 14, 16

*Vizcaino v. Areas USA, Inc.*,
    2015 WL 13573816 (C.D. Cal. Apr. 17, 2015) ............................... 11, 14, 17

*W. Mining Council v. Watt*,
    643 F.2d 618 (9th Cir. 1981) ................................................................................... 5

*Wards Cove Packing Co. v. Atonio*,
    490 U.S. 642 (1989) ................................................................................... 12, 14

*White v. Wilson*,
    2018 WL 6175385 (C.D. Cal. Mar. 23, 2018) ........................................................... 7

*Xin Liu v. Amway Corp.*,
    347 F.3d 1125 (9th Cir. 2003) ................................................................................... 7

*Zamora v. Penske Truck Leasing Co., L.P.*,
    2021 WL 809403 (C.D. Cal. Mar. 3, 2021) ........................................................ 6, 10

*Zeman v. Twitter, Inc.*,
    2023 WL 5599609 (N.D. Cal. Aug. 29, 2023) ........................................................ 19

**Statutes**

29 U.S.C. § 2615 ................................................................................................. 6, 7

42 U.S.C. § 2000e–2(k)(1)(B)(i) ................................................................................ 13

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 5, 6

## I.      INTRODUCTION

Plaintiffs Nhu Weinberg, Samantha Gongora, Julia Steele, Omolade Ogunsanya, Nanci Sills, Krista Bessinger, and Ikuhiro Ihara ("Plaintiffs") are former employees of Defendant X Corp., successor in interest to Twitter, Inc. ("Twitter").  Some Plaintiffs assert race and gender discrimination claims under Title VII, others assert age discrimination claims under the ADEA, and Plaintiff Weinberg asserts both an individual claim and a putative class claim for violation of the FMLA.  All of Plaintiffs' claims arise from Twitter's decision to include them in layoffs that it conducted following Elon Musk's acquisition of the company in late October 2022.

Plaintiffs' claims fail.  The ADEA and Title VII claims fail because Plaintiffs do not allege that they were performing their jobs in a satisfactory manner; they allege no facts to warrant a plausible inference of discriminatory animus to support a disparate treatment claim; and they fail to isolate and identity an employment practice, and fail to allege a significant disparity, to support a disparate impact claim.  In addition, Plaintiff Weinberg's individual FMLA claim fails because she alleges no facts that suggest her FMLA leave was a negative factor in her selection for layoff, nor does she allege any FMLA-related animus.  In addition, she fails to state a class claim because her class definition is fatally uncertain; she alleges no facts to support an inference of class liability; and she lacks standing to assert her putative class claims on behalf of employees who were "constructively discharged."

The Court should dismiss the Complaint in its entirety.

## II.     THE COMPLAINT'S MATERIAL ALLEGATIONS

### A.      The Plaintiffs

According to the Complaint, Plaintiffs held various positions at Twitter and worked for Twitter in various states for various amounts of time.  Compl., ¶¶ 9-14.  Each Plaintiff generically alleges that their "performance met the Company's expectations" throughout their employment.  *Id*.  The Complaint does not allege any facts about the Plaintiffs' job responsibilities or qualifications, or the job positions, responsibilities, or qualifications for any comparators.

### B.      The November 4 Reduction in Force and Subsequent Layoffs

Shortly after Musk acquired Twitter in October 2022, Twitter initiated a mass layoff that

1    affected half of Twitter's workforce.  *Id.* ¶ 23.  Twitter notified most laid off employees,

2    including all Plaintiffs other than Ihara, on November 4, 2022.  *Id.* ¶ 25.  Twitter notified other

3    employees of their layoffs in the following weeks, including Plaintiff Ihara, who was allegedly

4    notified on November 23, 2022.  *Id.*  The Complaint alleges no specific details regarding

5    Plaintiffs' separations from Twitter, other than the dates they were allegedly notified of their

6    layoffs.  *See id.* ¶¶ 9-15.

7         The Complaint alleges that the "[d]ecisions regarding which employees would be laid off

8    were made under extremely hurried circumstances, with little if any regard to employees' job

9    performance, qualifications, experience, and abilities."  *Id.* ¶ 24.  "Reportedly, the layoff

10    decisions were made quickly by a small group of managers under close supervision by Musk,"

11    including by managers from Tesla and other companies owned by Musk who allegedly "did not

12    have much, if any, knowledge about Twitter's operations."  *Id.* ¶ 26.  The Complaint does not

13    identify any layoff-related policy, process, or selection criteria that applied to Plaintiffs or any

14    other employees.  Nor does it identify any manager or group of managers who selected Plaintiffs

15    or others for layoff, state the location of any decision, or provide any information about the

16    decision-making process, including what Musk's alleged "supervision" of the selection process

17    entailed.

18        **C.**     **The FMLA Allegations**

19         Plaintiff Weinberg alleges a FMLA claim both individually and on behalf of a putative

20    class.  *Id.* ¶¶ 2, 8. According to the Complaint, Twitter informed her of her layoff on November 4,

21    2022, "less than a month" after she returned from FMLA leave.  *Id.* ¶ 29.  She also alleges that

22    "[a]pproximately 60% of employees who were on leave at the time of the November 4, 2022,

23    layoffs were notified that day that they were being laid off (as compared to approximately 51% of

24    employees overall)."  *Id.*  ¶ 30.  She does not allege that any decisionmaker exhibited any FMLA-

25    related animus toward her or anyone else.

26        **D.**     **The Race Allegations**

27         Plaintiff Ogunsanya alleges an individual race discrimination claim under Title VII.  He

28    does not allege any race-based animus directed toward him or any other Twitter employee, or any

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

1    alleged comments by Musk or any Twitter manager tied to the RIF.  Nor does Plaintiff

2    Ogunsanya allege that any of the unidentified decisionmakers harbored any race-based animus

3    toward him or other Black employees.

4         The Complaint alleges that Musk purportedly has shown "discriminatory animus against

5    Black Individuals" and then asserts that his putative race animus should be "imputed to Twitter."

6    *Id.*, ¶¶ 49-51.  Specifically, the Complaint cites an article that reported on a February 26, 2023

7    Twitter posting ("tweet") by Musk that allegedly defended Scott Adams, the creator of the Dilbert

8    comic strip, after Adams made racist comments.  *See id.*, ¶ 50.  Plaintiffs also cite Musk's alleged

9    reinstatement of the Twitter accounts of "neo-Nazis and white supremacists" who previously had

10   been banned from the platform for violating Twitter's posting policies.  *Id.*, ¶ 51.

11        The Complaint also alleges that Black employees were "statistically more likely to be

12   chosen for layoff on November 4, 2022, than other employees."  Compl., ¶ 48, Count III.  But the

13   Complaint does not allege any statistics or figures that substantiate that conclusory allegation.

14        **E.     The Gender Allegations**

15        Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger bring individual claims for sex

16   discrimination under Title VII.  The Complaint alleges various statistics purportedly based on a

17   spreadsheet that shows "which Twitter employees in the United States were retained and which

18   were laid off on November 4, 2022."  *Id.*, ¶ 33.  The Complaint says nothing about the origin or

19   creator of the spreadsheet, nor does it provide any other factual allegation that suggests that the

20   spreadsheet is genuine or accurate.  Plaintiffs allege that a labor economist, Dr. Killingsworth,

21   used the spreadsheet to extract demographic data and performed a chi-squared test that allegedly

22   shows a statistically significant gender disparity at 7.3491 standard deviations.  *Id.* ¶ 37.  This

23   statistic is based on the allegation that Twitter employed approximately 2,234 female employees

24   and 2,900 male employees prior to the layoff, and 1,271 female employees and 1,350 male

25   employees were laid off.  *Id.* ¶ 34.

26        Plaintiffs claim that this alleged disparity "cannot be explained based upon a justification

27   that Musk intended to retain more employees in engineering-related roles" because, "[a]ccording

28   to the spreadsheet," 59% of female engineers were laid off, while 45% of male engineers were

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

1    laid off, and 56% of females in non-engineering-related roles were laid off while 49% of male

2    employees in non-engineering roles were laid off.  *Id.*, ¶ 38, 39, 41.

3         The Complaint references comments by Musk that purportedly shows his "discriminatory

4    animus against women" and asserts that his putative animus should be imputed to Twitter.  *Id.*, ¶¶

5    44–47.  Plaintiffs stretch to construe several of Musk's Twitter posts ("tweets") and conduct as

6    reflecting gender animus, including a joke he made over a year ago (i.e., long before acquiring

7    Twitter) about breasts, a tweet that "Testosterone rocks [not going to lie]," and a tweet praising

8    the value of motherhood (*see id.*, ¶¶ 45, 46), as well as Musk purportedly having the "w" on the

9    Twitter sign at the corporate headquarters office painted white so it would appear as "Titter" in

10   April 2023 (*see id.*, ¶ 47).  The Complaint also includes a link to a news article containing

11   purported "before and after" photos of a few dozen employees in a conference room that

12   allegedly illustrates the disproportionate decline in the number of female employees at Twitter.

13   *Id.* ¶ 31.

14         F.    **The Age Allegations**

15         Plaintiffs Bessinger and Ihara bring individual claims for age discrimination under the

16   ADEA.  The Complaint alleges that "[o]lder employees (age fifty (50)) and older were . . .

17   statistically more likely to be laid off from Twitter than younger employees following Musk's

18   acquisition of the company."  Compl., ¶ 52.  The Complaint's allegation of age discrimination

19   rests almost exclusively on data and statistics allegedly derived from Twitter's disclosures to

20   employees under the Older Workers Benefit Protection Act ("OWBPA") that show "which

21   Twitter employees in the United States were retained and which were laid off on November 4,

22   2022."  *Id.*, ¶ 53.  According to Plaintiff, Twitter laid off approximately 2,686 out of 4,964

23   employees as part of its November 4 RIF.  *Id.*  Although Plaintiff possesses the age demographics

24   of Twitter's workforce before and after the RIF, the Complaint is silent about the age-related

25   statistics for workers aged 40 and over.  *See generally* Compl.  Instead, the Complaint focuses on

26   employees aged 50 and older.  According to the Complaint, Twitter laid off 149 of 248

27   employees (or 60% of employees) age 50 or older, and it laid off 2,537 of 4,716 employees (or

28   54% of employees) under age 50 in the United States.  *Id.* ¶¶ 53, 54.  Dr. Killingsworth allegedly

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

1 performed a chi-squared test that shows this demographic distribution is 1.936 standard

2 deviations from the normal expected distribution. *Id.* ¶ 56.

3      The Complaint references conduct by Musk that purportedly shows his "discriminatory

4 animus against older individuals" and argues that, as the "new owner and CEO, who oversaw and

5 closely managed the employees who were making layoff decisions and implementing his policies,

6 Musk's discriminatory animus" should be "imputed to Twitter." *Id.*, ¶¶ 58-59. Specifically, the

7 Complaint asserts only that Musk, who was 51 years old when he acquired Twitter, has a "history

8 of making ageist comments." *Id.* ¶ 58. The Complaint provides a single example of this

9 purported "history" of discriminatory bias. In a media interview from March 2022—more than

10 seven months before the RIF—Musk reportedly said that he "doesn't believe humans should live

11 for longer." *Id.* ¶¶ 58, 59.

12 **III.  LEGAL STANDARD**

13      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint's

14 allegations. A court must dismiss a claim unless the complaint articulates "enough facts to state a

15 claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

16 (2007); Fed. R. Civ. P. 12(b)(6). The "plausibility standard is not akin to a 'probability

17 requirement,' but rather, it asks for more than a sheer possibility that a defendant has acted

18 unlawfully" or "facts that are 'merely consistent with' a defendant's liability." *Ashcroft v. Iqbal*,

19 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556-57). A complaint must contain

20 "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of

21 action." *Twombly*, 550 U.S. at 555; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)

22 ("[B]are assertions . . . amounting to nothing more than a 'formulaic recitation of the elements'"

23 of a claim "are not entitled to an assumption of truth") (quoting *Iqbal*, 556 U.S. at 681).

24 Therefore, the Court may not "assume the truth of legal conclusions merely because they are cast

25 in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981);

26 *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996) (holding that "[c]onclusory

27 allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for

28 failure to state a claim.").

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

1    The Court considers whether the pleading's "factual content . . . allows the court to draw

2    the reasonable inference that the defendant is liable for the misconduct alleged," such that "it is

3    not unfair to require the opposing party to be subjected to the expense of discovery and continued

4    litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Dismissal is required when a

5    complaint lacks a cognizable legal theory or fails to allege facts sufficient to support a cognizable

6    legal theory. *Twombly*, 550 U.S. at 555; *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d

7    1097, 1104 (9th Cir. 2008); Fed. R. Civ. P. 12(b)(6).

8        In a putative class action, the plausibility standard under *Twombly* applies not only to the

9    named plaintiff's individual claims, but also to the class claims. *See, e.g., Mish v. TForce

10   Freight, Inc.*, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021) (dismissing class claims under

11   *Twombly* standard); *Zamora v. Penske Truck Leasing Co., L.P.*, 2021 WL 809403, at *3 (C.D.

12   Cal. Mar. 3, 2021) (same).

13   **IV.    ARGUMENT**

14       **A.    <u>Plaintiff Weinberg Fails to State a FMLA Claim.</u>**

15       The Ninth Circuit recognizes two species of claims under the FMLA: a claim for

16   retaliation/discrimination and a claim for interference. *Olson v. United States by & through Dep't

17   of Energy*, 980 F.3d 1334, 1338 (9th Cir. 2020); *Sanders v. City of Newport*, 657 F.3d 772, 777

18   (9th Cir. 2011).  Plaintiff here is not asserting a retaliation/discrimination claim because, as the

19   Ninth Circuit has explained, "[t]he anti-retaliation or anti-discrimination provisions do not cover

20   visiting negative consequences on an employee simply because he has used FMLA leave. Such

21   action is, instead, covered under § 2615(a)(1), the provision governing 'Interference [with the]

22   Exercise of rights.'" *Bachelder v. Am. W. Airlines, Inc*., 259 F.3d 1112, 1124 (9th Cir. 2001).[1]

23   That leaves an interference claim.  "Under Ninth Circuit case law, if an employer uses an

24   employee's taking of FMLA leave as a 'negative factor' in making 'adverse employment

25   decisions,' including hiring, promotions, or disciplinary actions, the employer interferes with the

26

27   _____

[1] FMLA retaliation claims are limited to circumstances where an employee opposed an unlawful
practice under the FMLA or instituted or participated in FMLA proceedings or inquiries.
*Bachelder*, 259 F.3d at 1124; *Sanders*, 657 F.3d at 777; 29 U.S.C. § 2615(a)(2), (b).

28

DEFENDANT'S NOTICE OF MOTION AND
                                                                MOTION TO DISMISS
                                                                Case No. 4:23-cv-04016-AMO

1  employee's exercise of FMLA rights in violation of § 2615(a)(1)."  *Banaga v. Gov't Emps. Ins.*

2  *Co.*, 2019 WL 2451418, at *5 (S.D. Cal. June 12, 2019) (citing *Xin Liu v. Amway Corp.*, 347 F.3d

3  1125, 1137 (9th Cir. 2003).  "To establish this type of interference claim, a plaintiff must show

4  that (1) he took FMLA-protected leave and (2) that the taking of the FMLA-protected leave

5  constituted a 'negative factor' in an adverse employment decision."  *Banaga*, 2019 WL 2451418,

6  at *5 (citing *Bachelder*, 259 F.3d at 1125).

7          Here, Plaintiff Weinberg's FMLA interference claim fails because she has not alleged

8  facts sufficient to support an inference that her FMLA leave was a negative factor in her selection

9  for layoff.  She alleges that Twitter notified her of her layoff on November 4, 2022, less than a

10  month after she returned from medical leave.  Compl. ¶ 29.  But the Complaint acknowledges that

11  Twitter laid off "more than half" of its U.S. workforce on November 4, 2022, which impacted

12  over 2,600 employees.  *Id.* ¶¶ 6, 33.  Given that Plaintiff was just one of a massive number of

13  employees whom Twitter laid off on November 4, the fact that Plaintiff had recently returned

14  from leave cannot support a plausible inference that her leave was a "negative factor" in her

15  selection for layoff a few weeks later.  That is especially true in the absence of any allegation of

16  FMLA-related animus by any RIF decisionmaker or anyone else at Twitter.

17          Nor do Plaintiff's putative statistics help her.  She alleges that Twitter laid off 60% of the

18  employees who were "on leave" on November 4, compared to "51% of employees overall."

19  Compl. ¶ 30.  These data points are insufficient because they are not "drawn from appropriate

20  comparison pools."  *White v. Wilson*, 2018 WL 6175385, at *5 (C.D. Cal. Mar. 23, 2018) (citing

21  *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1184–85 (9th Cir. 2002).  First, the data points are

22  insufficient because they report on employees who were "on leave," not employees who were on

23  FMLA leave.  *See. e.g., Carpenter v. Boeing Co.*, 456 F.3d 1183, 1198–99 (10th Cir. 2006)

24  (rejecting statistical comparison because "the study is not limited to data regarding those qualified

25  people subject to the challenged practice.");  *Stender v. Lucky Stores, Inc.*, 1991 WL 127073, at

26  *2–3 (N.D. Cal. Apr. 4, 1991) (explaining in a promotion case that "because one ordinarily must

27  have experience as Assistant Manager to be qualified for promotion to Store Manager . . . when

28  considering the rate of promotion to Store Manager positions, the relevant pool for comparison is

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

blacks and women in Assistant Manager positions.")  Second, Plaintiff was not on FMLA leave or any other type of leave at the time of the November 4 layoff, so she is not even included in the "60%" figure that allegedly supports an inference of discrimination against her.  *See id.*  Third, Plaintiff's own complaint asserts that the proper comparison is not between the number of employees who were on leave and the "overall" population; rather, the Complaint acknowledges that the proper comparison is between the number of employees who were on FMLA leave and those who were not on FMLA leave.  *See, e.g.*, Compl. ¶¶ 34-42 (comparing female layoffs to male layoffs, not female layoffs to overall layoffs).  Yet, the Complaint does not allege this comparison in connection with the FMLA claims.  *See, id.*, generally.

Thus, Plaintiff has failed to state an individual FMLA claim.

### B.     Plaintiff Weinberg Fails to State a FMLA Class Claim.

#### 1.     The FMLA Class Definition Is Fatally Uncertain.

Even if Plaintiff Weinberg had stated an individual FMLA claim, which she has not, the Court should dismiss her FMLA putative class claim because the class definition is fatally flawed. "A class definition should be precise, objective, and presently ascertainable."  *Gray v. Golden Gate Nat. Recreational Area*, 279 F.R.D. 501, 508 (N.D. Cal. 2011) (citations omitted); *see also* Manual for Complex Litigation, § 21.222, p. 290 (4th ed. 2004) ("An identifiable class exists if its members can be ascertained by reference to objective criteria.").  "[C]ourts look to whether the class definition establishes objective, rather than subjective, criteria for determining membership."  *Senne v. Kansas City Royals Baseball Corp.,* 315 F.R.D. 523, 563 (N.D. Cal. 2016); *Goel v. Coal. Am. Holding Co. Inc*., 2011 WL 13128300, at *8 (C.D. Cal. July 5, 2011). A class definition fails the objectivity test when it uses vague or poorly defined terms.  *See, e.g., Goel*, 2011 WL 13128300, at *8-9 (rejecting class of "cardiologists" in "Southern California" who "unknowingly" had discounts taken against payments to them); *Montoya v. City of San Diego*, 2021 WL 2350927, at *2 (S.D. Cal. June 9, 2021) (declining certification due to use of various vague terms in class definition).

Here, Plaintiff Weinberg purports to assert a FMLA claim "on behalf of employees, who were laid off by Twitter following Musk's acquisition of the company who had ***recently taken***, or

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

*were preparing to take*, a family and medical leave, under the FMLA."  Compl. ¶ 61 (emphasis added).  Two of the core terms in the class definition render it fatally uncertain.  It is unclear whether the reference to employees who had taken FMLA leave "recently" means FMLA leaves within one week, two weeks, four weeks, two months, six months, or some other time period.  The Complaint provides no guidance on the temporal parameters of "recent" FMLA leaves,  and the reader can only guess at what the Complaint might mean.  Similarly, Twitter would presumably have no knowledge of employees who "were preparing to take leave," and the Complaint supplies no objective criteria to explain what acts are sufficient to constitute an employee's "preparation" to take leave.[2]

The Court should therefore dismiss the putative class claims for failure to include objective criteria for class membership.

### 2.        The Complaint Does Not Allege a Plausible Class Claim.

The Complaint alleges that "[a]pproximately 60% of employees who were on leave *at the time* of the November 4, 2022, layoffs were notified that day that they were being laid off (as compared to approximately 51% of employees overall)."  Compl. ¶ 30 (emphasis added).  Setting aside the fatal infirmities with those putative data points, the alleged statistics on employees who were on leave "*at the time*" of the November 4 RIF have no bearing on the putative class claims, which the Complaint alleges on behalf of a different group of employees, i.e., those "who had *recently taken*" FMLA leave or who "*were preparing to take*" (or had applied for) FMLA leave. *See id.*, ¶ 2, ¶ 30 (emphasis added), Count I (emphasis added).  And, as noted above, the Complaint contains no allegation whatsoever regarding FMLA-related animus directed at any employee.

Thus, the Court should dismiss the class claims because they are not supported by allegations that support a plausible inference of class liability.  *See Iqbal,* 556 U.S. at 679 (stating that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than

---

[2] The Complaint elsewhere alleges the class claims on behalf of employees who had "applied" to take FMLA, *see* Compl. ¶ 2, which may or may not be the same group of employees who "were preparing to take" FMLA.  But this does not solve the problem because the Complaint says nothing about the temporal scope of those applications by comparison to the November 4 RIF.

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

conclusions"); *Jue v. Costco Wholesale Corp.,* No. C 10-00033-WHA, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010) ("Class allegations must [be] supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted."); *Zamora,* 2021 WL 809403, at *3 ("Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter [of class discovery]"). *Mish*, 2021 WL 4592124, at *8.

### 3. Plaintiff Lacks Standing to Assert Claims on Behalf of Employees Who Were "Constructively Discharged."

The Complaint suggests that Plaintiff Weinberg's FMLA claim includes not only employees who were laid off but also employees who were "constructively discharged."  Compl. ¶ 2.  But the Complaint includes no allegations whatsoever about constructive discharges.  In any event, Plaintiff was not constructively discharged—she was laid off—so she lacks standing to assert a claim on behalf of employees who may have been constructively discharged.  Request for Judicial Notice ("RJN"), Ex. 1 (*Strifling* Order at 13, n.9) ("Regardless of whether the Post-RIF Policy is a "constructive discharge" or not, it was not a discharge to which Plaintiffs were subjected.") (citing *Pottenger v. Potlach Corp.,* 329 F.3d 740, 750 (9th Cir. 2003) (explaining in the disparate impact context that "[a plaintiff] must show that [they were] subject to the particular employment practice" that they are challenging)).

### C. The Complaint Fails to State a Claim for Race Discrimination.

Plaintiff Ogunsanya fails to state a Title VII claim for race discrimination under either a disparate treatment or a disparate impact theory.

### 1. The Complaint Fails to State an Intentional Discrimination Claim.

"To establish a prima facie case under Title VII, a plaintiff must offer proof: (1) that the plaintiff belongs to a class of persons protected by Title VII; (2) that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a similarly situated employee who does not belong to the same protected class as the plaintiff."  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Here, Plaintiff Ogunsanya does not state a claim for race discrimination for a few

reasons.

First, the Complaint fails to allege that Plaintiff Ogunsanya was performing his job satisfactorily.  It alleges only the conclusion that his "performance met the company's expectations" without alleging any supporting facts, *see* Compl. ¶ 12, which does not satisfy the pleading standard.  *See, e.g., Vizcaino v. Areas USA, Inc*., 2015 WL 13573816, at *4 (C.D. Cal. Apr. 17, 2015) (dismissing discrimination claim because plaintiff "merely includes conclusory allegations . . . that he was performing his job competently, without offering any facts in support of that conclusion"); *Fresquez v. County of Stanislaus,* 2014 WL 1922560, at *5 (E.D. Cal. May 14, 2014) (dismissing discrimination claim because plaintiff's "threadbare assertion that she was competent to perform her duties" was insufficient to state claim); RJN, Ex. 1 (*Strifling* Order at 8) (dismissing gender discrimination claim against Twitter for failure to allege satisfactory job performance).

Second, Plaintiff Ogunsanya alleges no facts to plausibly suggest that Twitter treated him differently than similarly situated non-Black employees.  The Complaint says nothing about Plaintiff Ogunsanya's qualifications, experience, or abilities, or the comparative qualifications, experience, job performance, or abilities of any non-Black employee who worked in substantially similar positions.  *See* Compl. generally.  Nor does he allege any race animus directed toward him or any other employee at Twitter.  *See id*.  In an effort to plead race animus, the Complaint alleges that Musk purportedly has shown "discriminatory animus against Black Individuals" and then asserts that Musk's putative race animus should be "imputed to Twitter."  *Id.*, ¶¶ 49-51. Specifically, the Complaint cites a CNN article that reported on a February 26, 2023 Twitter posting ("tweet") by Musk that allegedly defended Scott Adams, the creator of the Dilbert comic strip, after Adams made racist comments.  *See id.*, ¶ 50.[3]  The article reports that Musk said, "the media is racist," in response to the controversy surrounding Adam's comments, that Musk defended Adams "after hundreds of newspapers stopped printing the comic strip," and that Musk said the Dilbert creator's comments "weren't good."  *Id.* (CNN article).  Plaintiffs also cite Musk's

---

[3] The Complaint cites https://www.cnn.com/2023/02/27/business/elon-musk-scott-adams-defense/index.html.

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

1  alleged reinstatement of the Twitter accounts of "neo-Nazis and white supremacists" who

2  previously had been banned from the platform for violating Twitter's posting policies.  *See id.*, ¶

3  51.  Setting aside whether these two anecdotes actually suggest any race animus on Musk's part

4  (and they do not), they cannot support an inference of intent because they have no nexus to the

5  RIF decisions, plaintiff, or any other Twitter employee.  *Merrick v. Farmers Ins. Grp.*, 892 F.2d

6  1434, 1438-39 (9th Cir. 1990) ("stray remarks are insufficient to establish discrimination."); RJN,

7  Ex. 1 (*Strifling* Order at 10) ("[i]solated remarks, unrelated to the discriminatory employment

8  decision, are generally insufficient to establish discriminatory intent.") (citing *Nesbit v. Pepsico,*

9  *Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that a comment "uttered in an ambivalent

10 manner" and "not tied directly to" the plaintiff's termination was "at best weak circumstantial

11 evidence of discriminatory animus")).

12       Thus, Plaintiff Ogunsanya fails to state a claim for intentional race discrimination.

13                **2.       The Complaint Fails to State a Disparate Impact Claim.**

14       Disparate impact claims "involve employment practices that are facially neutral in their

15 treatment of different groups but that in fact fall more harshly on one group than another."

16 *Int'l Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 335 (1977).  Under Title VII, "[a] plaintiff

17 establishes a prima facie case of disparate impact by showing a significant disparate impact on a

18 protected class caused by a specific, identified, employment practice or selection criterion."  *Stout*

19 *v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002).  As the Supreme Court has explained, "it is not

20 enough to simply allege that there is a disparate impact on workers, or point to a generalized

21 policy that leads to such an impact.  Rather, the employee is 'responsible for isolating and

22 identifying the specific employment practices that are allegedly responsible for any observed

23 statistical disparities.'"  *Smith v. City of Jackson*, 544 U.S. 228, 241 (2005) (quoting *Wards Cove*

24 *Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989)); *see Stout*, 276 F.3d at 1124.  The Ninth Circuit

25 has stressed that "'[i]dentifying a specific practice is not a trivial burden' in [] discrimination

26 cases alleging disparate impact."  *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107,

27 1114 (9th Cir. 2014) (quoting *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 101 (2008)).

28       As a result, "[p]laintiffs generally cannot attack an overall decisionmaking process in the

1    disparate impact context, but must instead identify the particular element or practice within the

2    process that causes an adverse impact." *Durante v. Qualcomm, Inc.*, 144 F. App'x. 603, 606 (9th

3    Cir. 2005) (quoting *Stout*, 276 F.3d at 1124); *Am. Fed'n of State, Cty., & Mun. Emps., AFL-CIO*

4    *(AFSCME)*, 770 F.2d at 1405 ("Disparate impact analysis is confined to cases that challenge a

5    specific, clearly delineated employment practice applied at a single point in the job selection

6    process."). A "decisionmaking process may be analyzed as a single employment practice if 'the

7    complaining party can demonstrate to the court that the elements of a respondent's

8    decisionmaking process are not capable of separation for analysis.'" *Stout*, 276 F.3d at 1124

9    (quoting 42 U.S.C. § 2000e–2(k)(1)(B)(i)). Here, Plaintiff Ogunsanya fails to allege a plausible

10   disparate impact claim for several reasons.

11         First, he does not allege any statistics or figures that support an inference of a racial

12   disparity—let alone a significant disparity—in the RIF selections. The Complaint does nothing

13   but allege in conclusory fashion that "Black employees were . . . statistically more likely to be

14   chosen for layoff" without more. Compl. ¶ 48. That conclusory assertion does not satisfy the

15   *Twombly* pleading standard. The absence of statistics or figures is especially notable given that

16   the Complaint pleads detailed statistics regarding the gender and age demographics of the

17   employees who were laid off, but it is silent on the race demographics. *See id.* ¶¶ 33-42 (gender),

18   ¶¶ 54-56 (age). In any event, Plaintiff's conclusory allegation is also insufficient because a

19   disparate impact claim requires a plausible inference of a "significant" disparity, not simply the

20   existence of a disparity. *Stout*, 276 F.3d at 1121.

21         Second, he does not isolate and identify a specific employment practice that is responsible

22   for any putative racial disparities. To state a viable disparate impact claim in a RIF case, the

23   complaint must "go beyond the general concept of a 'RIF' to identify actionable practices" that

24   informed the RIF. *See Davis v. D.C.*, 925 F.3d 1240, 1250 (D.C. Cir. 20019); *see also Gilbreath*

25   *v. Brookshire Grocery Co.*, 400 F. Supp. 3d 580, 591 (E.D. Tex. Aug. 21, 2019) (collecting cases

26   and explaining that "plaintiffs terminated in a RIF or layoff must identify a specific test,

27   requirement, or practice in the layoff selection process that is allegedly responsible for the

28   purported statistical disparities.") In addition, "a disparate-impact claim that relies on a statistical

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity. A robust causality requirement ensures that '[r]acial imbalance ... does not, without more, establish a prima facie case of disparate impact' . . . ." *Tex. Dept. of Hous. & Cmty. Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015) (citing *Wards Cove*, 490 U.S. at 653); *Mahler v. Jud. Council of California*, 67 Cal. App. 5th 82, 113 (2021).

The Complaint does not come close to identifying a specific RIF-related employment practice to challenge with a disparate impact claim. The Complaint does nothing but assert that an unidentified "small group of managers" made RIF decisions "under extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and abilities." *Id.* ¶¶ 24, 26. But those allegations address only what factors Twitter allegedly did *not* consider; they do not address what factors Twitter *did* consider that are responsible for the purported disparities. Thus, the Complaint lacks allegations sufficient to support a disparate impact claim based on the RIF. *See Stout*, 276 F.3d at 1121-22; *Enoh v. Hewlett Packard Enter. Co.*, 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018) (allegation that the defendant "'allowed an overwhelmingly Caucasian group of selectors to use a 'hazy' selection process for its employment decisions,' is too vague to support Plaintiffs' disparate impact claims."); *see also Freyd v. Univ. of Oregon*, 990 F.3d 1211, 1224 (9th Cir. 2021) (recognizing disparate impact claim where the plaintiff challenged a specific practice pay practice but "d[id] not challenge the general practice of awarding retention bonuses.").

**D.** **The Complaint Fails to State a Claim for Sex Discrimination.**

**1.** **The Complaint Fails to State an Intentional Discrimination Claim.**

Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger fail to state a claim for intentional gender discrimination under Title VII. *See supra* at 10 (stating elements of claim).

First, the Complaint fails to allege that Plaintiffs were performing their jobs satisfactorily. It alleges only the conclusion that their "performance met the company's expectations" without alleging any supporting facts, *see* Compl. ¶¶ 9-11, 13, 14, which does not satisfy the pleading standard. *See, e.g., Vizcaino*, 2015 WL 13573816, at *4; *Fresquez*, 2014 WL 1922560, at *5; RJN, Ex. 1 (*Strifling* Order at 7-8).

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

Second, they allege no facts to plausibly suggest that Twitter treated them differently than similarly situated male employees.  The Complaint says nothing about their qualifications, experience, or abilities, or the comparative qualifications, experience, job performance, and abilities of any other male employee who worked in substantially similar positions.  Compl., ¶ 12.  Nor do they allege any gender animus directed toward them or any other employee at Twitter.  *See* Compl. generally.  In an effort to plead gender animus, the Complaint references comments by Musk that purportedly shows his "discriminatory animus against women" and asserts that his putative animus should be imputed to Twitter.  *Id.*, ¶¶ 44–47; *see supra* at 4.  Setting aside whether those anecdotes involving Musk actually suggest any gender animus, they cannot support an inference of intent because they have no nexus to the RIF decisions or Plaintiffs.  *Merrick*, 892 F.2d at 1438-39; RJN, Ex. 1 (*Strifling* Order at 10-11).  Indeed, Plaintiffs do not allege any gender-based animus directed specifically towards them or any other Twitter employee, or any alleged comments by Musk or any decisionmaker that are tied to the RIF.  Nor do they allege that any of the unidentified RIF decisionmakers harbored any gender-based animus toward them or other women.

Thus, Plaintiffs fail to state a claim for intentional gender discrimination.

**2.      The Complaint Fails to State a Disparate Impact Claim.**

Plaintiffs fail to allege a plausible gender-based disparate impact claim for several reasons.

First, although the Complaint alleges the existence of a statistical disparity, the Complaint's statistical allegations are internally inconsistent.  Plaintiffs start by claiming that the November 4 RIF resulted in a bottom-line gender disparity across the entire U.S. workforce (i.e., ignoring Plaintiffs' own roles and teams), and then they assert that the disparity "cannot be explained based upon a justification that Musk intended to retain more employees in engineering-related roles" because, "[a]ccording to the spreadsheet," 59% of female engineers were laid off, while 45% of male engineers were laid off, and 56% of females in non-engineering-related roles were laid off while 49% of male employees in non-engineering roles were laid off.  *Id.*, ¶ 38, 39, 41.  But those alleged statistics are inconsistent with the Complaint's further allegations that 63%

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

of female engineers were laid off (rather than 59%), 48% of male engineers were laid off (rather than 45%), 51% of female non-engineers were laid off (rather than 56%), and 42% of male non-engineers were laid off (rather than 49%). *Id.* ¶ 42. The reader is left to guess at which of the Complaint's figures may be accurate, or if any of them are accurate, which casts doubt on the plausibility of the putative statistics alleged in the Complaint generally. *See, e.g., Kennedy v. Bank of Am.*, N.A., 2012 WL 1458196 *4 (N.D. Cal. Apr. 26, 2012) ("While the Court does not determine the truth of the allegations on a motion to dismiss, the Court need not accept allegations that are contradicted by other allegations in the complaint."); *Marchioli v. Pre-Employ.com, Inc.*, 2017 WL 8186761, *19, 2017 (C.D. Cal. June 30, 2017) ("Contradictory allegations such as these are inherently implausible, and would not survive a motion to dismiss."); *see also Kobayashi v. McMullin*, 2022 WL 3137958, at *38 (C.D. Cal. May 31, 2022), *report and recommendation adopted as modified*, 2022 WL 3226169 (C.D. Cal. Aug. 8, 2022) (noting that the allegations were "internally inconsistent" and that, accordingly, "they d[id] not suffice to state a claim.")

Second, as with the failed race-based disparate impact discussed above, the gender-based disparate impact claim fails to isolate and identify a specific employment practice that is responsible for any putative gender disparities. *See Tex. Dept. of Hous. & Cmty. Affairs*, 576 U.S. at 542; *Davis*, 925 F.3d at 1250; *Gilbreath*, 400 F. Supp. 3d at 591. It does nothing but assert that an unidentified "small group of managers" made RIF decisions "under extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and abilities." Compl. ¶¶ 24, 26. But those allegations address only what factors Twitter allegedly did *not* consider; they do not address what factors Twitter *did* consider that are responsible for the purported disparities. Thus, the Complaint lacks allegations sufficient to support a disparate impact claim based on the RIF. *Stout*, 276 F.3d at 1121-22; *Enoh*, 2018 WL 3377547, at *14; *Freyd,* 990 F.3d at 1224 .

### E.    The Complaint Fails to State a Claim for Age Discrimination.

#### 1.    The Complaint Fails to State an Intentional Discrimination Claim.

Plaintiffs Bessinger and Ihara fail to state a claim for intentional age discrimination for the

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

same reasons that the Complaint's gender and race discrimination claims fail.[4]

First, the Complaint fails to allege that Plaintiffs were performing their jobs satisfactorily. It alleges only the conclusion that their "performance met the company's expectations" without alleging any supporting facts, *see* Compl. ¶¶ 3, 14, 15, which does not satisfy the pleading standard. *See, e.g., Vizcaino*, 2015 WL 13573816, at \*4; *Fresquez*, , 2014 WL 1922560, at \*5; RJN, Ex. 1 (*Strifling* Order at 7-8).

Second, they allege no facts to plausibly suggest that Twitter treated them differently than similarly situated younger employees. The Complaint says nothing about Plaintiffs' roles, qualifications, job performance, or abilities, or the comparative qualifications, job performance, or abilities of younger employees who worked in substantially similar positions and were not laid off. *Id.* Nor does it identify the managers who made the RIF decisions, state the age of those managers, or allege that any of those unidentified decision-makers harbored any age animus towards Plaintiffs or any other employee, or even that the managers knew the employees' ages when making RIF selections. *See* Compl. generally. The Complaint's only attempt to allege age animus is a Musk interview from March 2022—more than seven months before the RIF— where he reportedly said that he "doesn't believe humans should live for longer." *Id.* ¶¶ 58, 59 (citing Fox Business article).[5] Musk made this statement in a discussion about "declining birthrate" and human "longevity" as possible "threat[s] to the future of civilization," the "proper[]" functioning of "democracy," and how he himself is "not afraid of dying." *See id.* (Fox Business article). The interview contains no comments about Musk's views about workers age 50 and over or about employment practices at Twitter, a company that he did not acquire until months later. Musk's comment does not support any inference of age animus—let alone an inference of "but-for" causation—because the Complaint contains nothing to link the comment to the actual RIF decisions (or to any other policy or practice at Twitter). *Merrick*, 892 F.2d at 1438-39; RJN, Ex.

---

[4] The ADEA does not adopt Title VII's motivating factor test. Instead, to state an age discrimination claim under the ADEA, a plaintiff must plead that age was the "but-for" cause of an adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) (ADEA requires "but-for" causation).

[5] The Complaint cites https://www.foxbusiness.com/lifestyle/lonely-elon-musk-humans-shouldnt-live-longer-asphyxiate-society.

DEFENDANT'S NOTICE OF MOTION AND
MOTION TO DISMISS
Case No. 4:23-cv-04016-AMO

1 (*Strifling* Order at 10).

## 2.     The Complaint Fails to State a Disparate Impact Claim.

The Complaint fails to state an age-based disparate impact claim for several reasons.

First, Plaintiffs allege that Twitter's layoffs "affected a higher proportion of older employees (age fifty (50) and over)."  Compl. at p. 14 (Count IV).  But the ADEA protects employees who are 40 or older.  The statute does not recognize a disparate impact claim predicated on disparities for a "subgroup" of older workers who are age 50 or older.  *E.E.O.C. v. McDonnell Douglas Corp*., 191 F.3d 948, 951 (8th Cir. 1999) ("If disparate-impact claims on behalf of subgroups were cognizable under the ADEA, the consequence would be to require an employer engaging in a RIF to attempt what might well be impossible: to achieve statistical parity among the virtually infinite number of age subgroups in its work force.  Adoption of such a theory, moreover, might well have the anomalous result of forcing employers to take age into account in making layoff decisions, which is the very sort of age-based decision-making that the statute proscribes."); *Smith v. Tennessee Valley Auth*., 924 F.2d 1059 (6th Cir. 1991) ("A plaintiff cannot succeed under a disparate impact theory by showing that younger members of the protected class were preferred over older members of the protected class.") (citing *Lowe*, 886 F.2d at 1373); *Criley v. Delta Air Lines, Inc*., 119 F.3d 102, 105 (2d Cir. 1997) (disparate impact claim under the ADEA must "allege a disparate impact on the entire protected group, i.e., workers aged 40 and over.") (citing *Lowe v. Commack Union Free Sch. Dist*., 886 F.2d 1364, 1372–73 (2d Cir. 1989)).

Although the Ninth Circuit has not decided the issue, district courts in this Circuit have repeatedly rejected "subgroup" disparate impact claims under the ADEA.  *See, e.g., Kinnally v. Rogers Corp*., 2009 WL 597211, at *10 (D. Ariz. Mar. 9, 2009) ("The Court agrees with the circuits that have rejected disparate impact claims based on age sub-groups. The Court believes that the Ninth Circuit Court of Appeals would also agree with those circuits"); *Schechner v. KPIX-TV*, 2011 WL 109144, at *5 (N.D. Cal. Jan. 13, 2011) ("[C]ourts have consistently held that the relevant group for purposes of a disparate impact age discrimination cases consists of individuals aged 40 or older."); *Rudwall v. Blackrock, Inc.*, 2011 WL 767965, (N.D. Cal. Feb. 28,

1 2011) ("[Plaintiff's] Rudwall's relevant statistical data fail to compare the impact of BlackRock's

2 2008 terminations on employees aged 40 and older to the impact on those aged 39 and younger,

3 and thus they fail to support a prima facie case of disparate impact age discrimination.").[6]  As a

4 result, Plaintiffs' disparate impact "subgroup" claim fails.

5    Second, Plaintiffs have failed to allege a significant statistical disparity that supports a

6 disparate impact claim.  They allege that the sub-group of employees age 50 or older had a

7 selection rate that measures 1.936 standard deviations.  Compl. ¶ 56.  As discussed above,

8 however, Plaintiffs' allegations regarding the demographic data on "the spreadsheet" that they are

9 using are internally inconsistent and thus do not support any plausible inference.  *See supra* at 15-

10 16.  Also, Plaintiffs Bessinger and Ihara do not allege their ages or allege if they were age 50 or

11 older at the time of their layoffs.  *See* Compl. ¶ 5.  In addition, a disparity at 1.936 standard

12 deviations is not statistically significant under Ninth Circuit law.  *See Paige v. California*, 233 F.

13 App'x 646, 648 (9th Cir. 2007) (recognizing statistical significance threshold of 1.96 standard

14 deviations).  Thus, Plaintiffs have pleaded themselves out of court.

15    Third, like Plaintiffs' failed disparate impact claims based on race and gender, Plaintiffs'

16 age-based disparate impact claim fails because they do not isolate and identify a specific

17 employment practice to challenge.  *See supra* at 13-14.

18 **V. CONCLUSION**

19    For the reasons stated above, the Court should dismiss the Complaint in its entirety.

20 Dated: February 2, 2024       MORGAN, LEWIS & BOCKIUS LLP

21              By /s/ Brian D. Berry

22                Eric Meckley
                Brian D. Berry

23                Ashlee Cherry
                Kassia Stephenson

24                Attorneys for Defendant

25                X CORP. as Successor in Interest to
                TWITTER, INC.

26

27

28 [6] Judge Illston disagreed with these authorities and concluded that the ADEA recognizes a sub-group disparate impact claim.  *See Zeman v. Twitter, Inc.*, 2023 WL 5599609, at *5 (N.D. Cal. Aug. 29, 2023).  Respectfully, that conclusion in *Zeman* is legal error.