1  SHANNON LISS-RIORDAN (SBN 310719)
   (sliss@llrlaw.com)
2  THOMAS FOWLER (*pro hac vice* forthcoming)
   (tfowler@llrlaw.com)
3  LICHTEN & LISS-RIORDAN, P.C.
   729 Boylston Street, Suite 2000
4  Boston, MA 02116
   Telephone:     (617) 994-5800
5  Facsimile:     (617) 994-5801
6

7  *Attorneys for Plaintiffs*

8

9

10              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
11                  **SAN FRANCISCO DIVISION**

12

13

14                                        Case No. 3:23-cv-04016-AMO

15 NHU WEINBERG, on behalf of herself and all
   others similarly situated, SAMANTHA
16 GONGORA, JULIA STEELE, OMOLADE           **PLAINTIFFS' OPPOSITION TO
   OGUNSANYA, NANCI SILLS, KRISTA           DEFENDANTS' MOTION TO DISMISS
17 BESSINGER, and IKUHIRO IHARA,            THE COMPLAINT**

18                   Plaintiffs,

19           v.                            Date:     March 14, 2024

20 TWITTER, INC. and X. CORP.,             Time:     2:00 PM, PST

21                                         Judge:    Hon. Araceli Martinez-Olquin

22                   Defendants.

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................. 1

II.   PROCEDURAL AND FACTUAL BACKGROUND ..................................................... 3

    A.    Allegations Relating to Improper Interference with FMLA Rights....................... 4

    B.    Allegations Relating to Sex Discrimination Under Title VII ................................ 4

    C.    Allegations Relating to Race Discrimination Under Title VII .............................. 6

    D.    Allegations Relating to Age Discrimination Under the ADEA............................. 6

III.  ARGUMENT.................................................................................................................... 7

    A.    Legal Standard for Motion to Dismiss Under Rule 12(b)(6) ................................ 7

    B.    Plaintiff Weinberg Has Stated an Interference Claim Under the FMLA............... 8

    C.    The Court Should Deny Twitter's Motion to Dismiss Plaintiff Weinberg's
        Class FMLA Claim ............................................................................................ 11

    D.    Plaintiffs Have Stated Claims for Sex and Race Discrimination Under
        Title VII and Age Discrimination Under the ADEA. ........................................... 14

        1.    Plaintiffs have pleaded facts sufficient to support plausible claims
            of intentional discrimination. ................................................................. 14

        2.    Plaintiffs have pleaded facts sufficient to support plausible
            disparate impact claims............................................................................ 19

IV.   CONCLUSION ............................................................................................................... 25

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 556 U.S.
        662, 129 S. Ct. 1937 L. Ed. 2d 868 (2009) ................................................................. 8, 9

Asmo v. Keane, Inc.
        471 F.3d 588 (6th Cir. 2006) .......................................................................................... 11

B.K. by next friend Tinsley v. Snyder
        922 F.3d 957 (9th Cir. 2019) .......................................................................................... 17

Bachelder v. Am. W. Airlines, Inc.
        259 F.3d 1112 (9th Cir. 2001) ........................................................................................... 9

Banaga v. Gov't Emps. Ins. Co.
        2019 WL 2451418 (S.D. Cal. June 12, 2019) ............................................................. 2, 11

Bell Atl. Corp. v. Twombly
        550 U.S. 544 (2007) ...................................................................................................... 8, 9

Best v. California Dep't of Corr.
        21 F. App'x 553 (9th Cir. 2001) ..................................................................................... 19

Borja-Valdes v. City & Cnty. of San Francisco
        2015 WL 5522287 (N.D. Cal. Sept. 18, 2015) ............................................................... 21

Borodaenko v. Twitter, Inc.
        No. 22-cv-07226-HSG (N.D. Cal) ..................................................................................... 1

Carpenter v. Boeing Co.
        456 F.3d 1183 (10th Cir. 2006) ....................................................................................... 12

Cattoche v. United Airlines, Inc.
        2022 WL 3702098 (N.D. Cal. Aug. 26, 2022) ................................................................ 24

Cattoche v. United Airlines, Inc.
        No. 22-16400, 2023 WL 6803540 (9th Cir. Oct. 16, 2023) ............................................ 24

Cerjanic v. FCS USA, LLC
        2018 WL 3729063 (E.D. Mich. Aug. 6, 2018) ............................................................... 33

Chaidez v. Ford Motor Company
        937 F.3d 998 (7th Cir. 2019) ..................................................................................... 28, 29

Clerkin v. MyLife.Com
        2011 WL 3809912 (N.D. Cal. Aug. 29, 2011) ................................................................ 14

Cooper v. Cate
    2011 WL 5554321 (E.D. Cal. Nov. 15, 2011) .................................................................... 22

Cruz v. Sky Chefs, Inc.
    2013 WL 1892337 (N.D. Cal. Aug. 29, 2011) ................................................................. 13

Darling Int'l, Inc. v. Baywood Partners, Inc.
    2007 WL 2904035 (N.D. Cal. Oct. 2, 2007) .................................................................... 33

Davis v. D.C.
    925 F.3d 1240 (D.C. Cir. 20019) ..................................................................................... 26, 27

Diaz v. Eagle Produce Ltd. P'ship
    521 F.3d 1201 (9th Cir. 2008) ......................................................................................... 19

Doninger v. Pac. Nw. Bell, Inc.
    564 F.2d 1304 (9th Cir.1977) ......................................................................................... 3, 16

Duane v. IXL Learning, Inc.
    2017 WL 2021358 (N.D. Cal. May 12, 2017) ................................................................. 10, 11

Egbukichi v. Wells Fargo Bank, NA
    2017 WL 1199737 (D. Or. Mar. 29, 2017) ...................................................................... 23

Enoh v. Hewlett Packard Enterprise Co.
    2018 WL 3377547 (N.D. Cal. July 11, 2018) .................................................................. 27, 28

Fallcochia v. Saxon Mortg., Inc.
    709 F.Supp.2d 860 (E.D. Cal.2010) ................................................................................. 8

Finch v. Hercules, Inc.
    865 F. 1104 (D. Del. 1994) ............................................................................................. 33

Fox v. Bonneville Admin.
    243 F.3d 547 (9th Cir. 2000) ......................................................................................... 32

Freyd v. University or Oregon
    990 F.3d 1211 (9th Cir. 2021) ......................................................................................... 28

Garay v. Lowes Home Centers, LLC
    2017 WL 5473887 (D. Or. Nov. 14, 2017) ...................................................................... 13

Garcia v. Country Wide Financial Corp.
    2008 WL 7842104 (C.D. Cal. Jan. 17, 2008) .................................................................. 13

Gilbreath v. Brookshire Grocery Co.
    400 F. Supp. 3d 580 (E.D. Tex. Aug. 21, 2019) .............................................................. 26, 27

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Graffam v. Scott Paper Co.
    848 F. Supp. 1 (D. Maine 1994) ...................................................................... 33

Haney v. United Airlines, Inc.
    2016 WL 80554 (N.D. Cal. Jan. 7, 2016) ........................................................ 19

Harris v. Amgen, Inc.
    573 F.3d 728 (9th Cir. 2009) .......................................................................... 32

Hemmings v. Tidyman's Inc.
    285 F.3d 1174 (9th Cir. 2002) ........................................................................ 25

Henderson v. J.M. Smucker Co.
    2011 WL 1050637 (C.D. Cal. Mar. 17, 2011) ................................................. 16

Hensley-Maclean v. Safeway, Inc.
    2015 WL 3956099 (N.D. Cal. June 29, 2015) ................................................. 17

Horn v. Cusman & Wakefield Western
    72 Cal. App. 4th 798 (1999) ........................................................................... 23

In re Wal-Mart Stores, Inc. Wage and Hour Litig.
    505 F. Supp. 2d 609 (N.D. Cal. 2007) ............................................................ 15

Karlo v. Pittsburgh Glass Works, LLC
    849 F.3d 61 (3rd Cir. 2017) ............................................................................ 33

Karpe v. Chao
    416 F. Supp. 3d 1021 (S.D. Cal. 2019) ..................................................... 28, 29

Katz v. Regents of the Univ. of California
    229 F.3d 831 (9th Cir. 2000) .......................................................................... 25

Kennedy v. Bank of America, N.A.
    2012 WL 1458196 (N.D. Cal. Apr. 26, 2012) ................................................. 31

King v. National General Insurance Co.
    2021 WL 2400899 (N.D. Cal. June 11, 2021) ............................................ 2, 14

Kobayashi v. McMullin
    2022 WL 3137958 (C.D. Cal. May 31, 2022) ................................................. 31

Kobayashi v. McMullin
    2022 WL 3226169 (C.D. Cal. Aug. 8, 2022) .................................................. 31

Lee v. City of Los Angeles
    250 F.3d 668 (9th Cir. 2001) .......................................................................... 32

Lee v. Hertz Corp.
    330 F.R.D. 557 (N.D. Cal. 2019) ............................................................. 25, 30

Lindsey v. Claremont Middle Sch.
    2012 WL 5988548 (N.D. Cal. Nov. 29, 2012) ............................................. 20

Liu v. Uber Techs, Inc.
    EEOC Amicus Brief, Case No. 22-16507 (9th Cir. Apr. 3, 2023) ................... 30

Lyons v. England
    307 F.3d 1092 (9th Cir. 2002) ........................................................... 18, 19

Mahler v. Judicial Counsel of Cal.
    67 Cal.App.5th 82 (2021) ....................................................................... 33

Marchioli v. Pre-employ.com
    2017 WL 8186761 (C.D. Cal. June 30, 2017) ........................................... 31

Marziano v. Cty. of Marin
    2010 WL 3895528 (N.D. Cal. Oct. 4, 2010) .............................................. 22

McDonnell Douglas Corp. v. Green
    411 U.S. 792 (1973) ....................................................................... 18, 19

McGinest v. GTE Service Corp.
    360 F.3d 1103 (9th Cir. 2004) ................................................................. 18

Melendres v. Arpaio
    784 F.3d 1254 (9th Cir. 2015) ................................................................. 17

Meyer v. Bear Rd. Assocs.
    124 F. App'x. 686 (2d Cir. 2005) ............................................................. 30

Mi Pueblo San Jose, Inc. v. City of Oakland
    2006 WL 2850016 (N.D. Cal. Oct. 4, 2006) .............................................. 21

Morales v. Laborers' Union Loc. 304
    2012 WL 70578 (N.D. Cal. Jan. 9, 2012) .................................................... 8

Moussouris v. Microsoft Corp.
    2016 WL 6037978 (W.D. Wash. Oct. 14, 2016) ......................................... 25

Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n
    294 F. Supp. 3d 940 (N.D. Cal. 2018) ................................................ 12, 22

Nat'l Fair Hous. All. v. Travelers Indem. Co.
    261 F. Supp. 3d 20 (D.D.C. 2017) ........................................................... 30

O'Brien v. Caterpillar, Inc.
        900 F.3d 923 (7th Cir. 2018) ........................................................................... 33

O'Donnell v. U.S. Bancorp Equip. Fin., Inc.
        2010 WL 2198203 (N.D. Cal. May 28, 2010) ............................................. 9, 20

Ogola v. Chevron Corp.
        2014 WL 4145408 (N.D. Cal. Aug. 21, 2014) ............................................. 3, 14

Olson v. United States by & through Dep't of Energy
        980 F.3d 1334 (9th Cir. 2020) ........................................................................... 9

Perata v. City & Cnty. of San Francisco
        2023 WL 4537695 (N.D. Cal. July 13, 2023) .................................................... 9

Pottenger v. Potlach Corp.
        329 F.3d 740 (9th Cir. 2003) ............................................................... 4, 26, 27

Rose v. Wells Fargo & Co.
        902 F.2d 1417 (9th Cir. 1990) ......................................................................... 27

Sanders v. City of Newport
        657 F.3d 772 (9th Cir. 2011) ........................................................................... 10

Segar v. Smith
        738 F.2d 1249 (D.C. Cir. 1984) ....................................................................... 12

Seifi v. Mercedes-Benz USA, LLC
        2013 WL 2285339 (N.D. Cal. May 23, 2013) ................................................. 15

Sheppard v. David Evans & Assoc.
        694 F.3d 1045 (9th Cir. 2012) ......................................................................... 20

Slovin v. Sunrun, Inc.
        2016 WL 5930631 (N.D. Cal. Oct. 12, 2016) ................................................. 14

Stender v. Lucky Stores, Inc.
        1991 WL 127073 (N.D. Cal. Apr. 4, 1991) ..................................................... 12

Stout v. Potter
        276 F.3d 1118 (2d Cir. 2002) ........................................................................... 28

Strifling et al. v. Twitter, Inc. et al.
        Civ. Act. No. 4:22-cv-07739-JST (N.D. Cal.) ............................................. 1, 22

Sypherd v. Lazy Dog Restaurants, LLC
        2020 WL 5846481 (C.D. Cal. July 24, 2020) ................................................... 4

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Texas Dep't of Cmty. Affs. v. Burdine
 450 U.S. 248, 253 (1981)) ........................................................................... 18, 20

TopDevz, LLC v. LinkedIn Corp.
 2021 WL 3373914 (N.D. Cal. Aug. 3, 2021) ................................................ 16

Travers v. Flight Servs. & Sys., Inc.
 737 F.3d 144 (1st Cir. 2013) ....................................................................... 23, 24

Tsur v. Intel Corp.
 2022 WL 17985573 (D. Or. Dec. 29, 2022) ................................................. 26

Usher v. O'Reilly Automotive, Inc.
 2014 WL 12597587 (C.D. Cal. May 27, 2014) ............................................ 23

Vinole v. Countrywide Home Loan, Inc.
 571 F.3d 935 (9th Cir. 2009) ................................................................... 3, 17

Watson v. Fort Worth Bank & Trust
 487 U.S. 977 (1988) ................................................................................. 22

White v. Wilson
 2018 WL 6175385 (C.D. Cal. Mar. 23, 2018) .............................................. 12

Wood v. City of San Diego
 678 F.3d 1075 (9th Cir. 2012) ................................................................ 4, 19

Xin Liu v. Amway Corp.
 347 F.3d 1125 (9th Cir. 2003) ............................................................. 2, 10, 12

Zeman v. Twitter, Inc. et al.
 Civ. Act. No. 3:23-cv-01786-SI (N.D. Cal.) ........................................... passim

**Statutes**

29 U.S.C. § 2601 ............................................................................................. 1

29 U.S.C. § 621 .............................................................................................. 1

42 U.S.C. § 2000e ........................................................................................... 1

**Rules**

Fed R. Civ. P 12(b)(6) ............................................................................ 7, 11, 17

Fed R. Civ. P 23 .................................................................................... 11, 13, 14

Fed R. Civ. P. 12(b) ....................................................................................... 12

Fed. Prac. & Proc. § 1491 .................................................................................... 25

Federal R. Civ. P. 8(a)(2) ...................................................................................... 7

## I.      INTRODUCTION

This case is brought by former Twitter employees Nhu Weinberg, Samantha Gongora, Julia Steele, Omolade Ogunsanya, Nanci Sills, Krista Bessinger, and Ikuhiro Ihara, all of whom were laid off shortly after multi-billionaire Elon Musk purchased the company. See Class Action Complaint (Dkt. 1). Plaintiff Weinberg, on behalf of herself and similarly situated former Twitter employees, alleges that Twitter violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, by interfering with her right to take family or medical leave. Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger allege that Defendants X. Corp and Twitter (hereafter referred to as Twitter) engaged in unlawful discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*. Plaintiff Ogunsanya alleges that Twitter engaged in unlawful discrimination on the basis of race in violation of Title VII. Plaintiffs Bessinger and Ihara allege that Twitter engaged in unlawful discrimination against workers over the age of fifty (50) in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621.[1]

In its Motion to Dismiss the Complaint (Dkt. 23), Twitter argues that Plaintiff Weinberg has failed to state a plausible FMLA claim. Twitter also argues that Plaintiff Weinberg's class claim must be dismissed because the proposed class definition is uncertain and she lacks standing to assert claims on behalf of employees who were constructively discharged. Twitter further contends that no Plaintiff has stated a plausible sex, race, or age discrimination claim under either a disparate treatment or disparate impact theory of liability. These arguments are unavailing. Twitter's motion to dismiss should be denied.

---

[1]      Plaintiffs' counsel also represent former Twitter employees who have asserted class action claims for sex discrimination in Strifling et al. v. Twitter, Inc. et al., Civ. Act. No. 4:22-cv-07739-JST (N.D. Cal.), age discrimination in Zeman v. Twitter, Inc. et al., Civ. Act. No. 3:23-cv-01786-SI (N.D. Cal.), and disability and sex discrimination in Borodaenko v. Twitter, Inc. et al. . Plaintiffs' counsel moved to relate and consolidate those three cases in Borodaenko, which was denied (Borodaenko, Dkts. 41, 58). Plaintiffs counsel also represent former Twitter employees who have asserted class action sex and age discrimination claims based on Elon Musk's email of November 16, 2022, requiring employees to agree to being "extremely hardcore" and "working long hours at high intensity" (see Complaint ¶ 30, Dkt. 1) in Frederick-Osborn, Civ. Act. No. 3:24-cv-00125 (N.D. Cal.).

First, Plaintiff Weinberg has met her burden of pleading that Twitter unlawfully interfered with her right to take FMLA leave (as well as that of other similarly situated employees). Under the FMLA, an employer is prohibited from "us[ing] an employee's taking of FMLA leave as a '*negative factor*' in making 'adverse employment decisions.'" Banaga v. Gov't Emps. Ins. Co., 2019 WL 2451418, at *5 (S.D. Cal. June 12, 2019) (emphasis added). Weinberg alleges that she was terminated shortly after returning from 10 weeks of FMLA leave, that a disproportionate share of the employees on leave were terminated during the November 4, 2022 layoffs, and that the majority of employees on leave who remained at the company after November 4, 2022 left when Musk required employees to agree to being "extremely hardcore" and "working long hours at high intensity" to continue working at Twitter. These allegations give rise to an inference of discrimination and are more than sufficient to state a plausible claim under the FMLA. See Xin Liu v. Amway Corp., 347 F.3d 1125, 1137 (9th Cir. 2003).

Second, Twitter's argument that Plaintiff Weinberg's FMLA class claim fails is both premature and unsupported by law. Courts in the Ninth Circuit have taken an "overwhelmingly negative" view of motions challenging the sufficiency of class allegations at the Rule 12 stage. King v. National General Insurance Co., 2021 WL 2400899, at *15 (N.D. Cal. June 11, 2021). As the Ninth Circuit has explained, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [is] maintainable." Vinole v. Countrywide Home Loan, Inc., 571 F.3d 935, 942 (9th Cir. 2009) (quoting  Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1313 (9th Cir.1977)). Courts only dismiss class action allegations at the Rule 12 stage if they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola v. Chevron Corp., 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014); see also Zeman v. Twitter, Inc., 2023 WL 5599609, at *7 (N.D. Cal. Aug. 29, 2023). Here, by contrast, Plaintiff Weinberg has plausibly alleged that Twitter is liable to an objectively identifiable group of laid off employees who have taken family or medical leave (including those that were on a leave of absence at the time of the layoffs) or were preparing to take a family or

medical leave (i.e., employees who had informed Twitter of their upcoming need for family or medical leave) on a class-wide basis. Twitter cannot misuse Rule 12 to launch a preemptive attack on class certification.

Third, Plaintiffs have met their burden of pleading that Twitter unlawfully discriminated against female and Black employees under Title VII, and older employees under the ADEA, on a disparate treatment theory of liability. As discussed at length below, Plaintiffs have provided extensive detail supporting their allegations that Twitter engaged in unlawful sex, race, and age discrimination in conducting its reduction in force ("RIF"). These factual allegations, which include statistical analyses of the RIF undertaken by an expert economist and Elon Musk's (the company's new owner) own public statements evincing discriminatory animus towards Plaintiffs' respective protected classes, are more than sufficient to state a claim for disparate treatment under Title VII and the ADEA. See Wood v. City of San Diego, 678 F.3d 1075, 1081 (9th Cir. 2012).

Finally, Plaintiffs have met their burden of pleading that Twitter unlawfully discriminated against female and Black employees under Title VII, and older employees under the ADEA, on a disparate impact theory of liability. Even if Twitter's RIF is considered a facially neutral employment action, Plaintiffs have met their burden at this stage by plausibly alleging that the layoffs had a significantly disproportionate impact on women, Black employees, and older employees. See, e.g., Sypherd v. Lazy Dog Restaurants, LLC, 2020 WL 5846481, at *4 (C.D. Cal. July 24, 2020). Twitter contends that Plaintiffs' claims fail because they have not identified a particular employment practice that resulted in the disparate impact. However, the Ninth Circuit has unequivocally held that allegations regarding a RIF alone are sufficient to state a disparate impact claim. See Pottenger v. Potlach Corp., 329 F.3d 740, 749 (9th Cir. 2003). Judge Ilston likewise recently found that similar allegations against Twitter related to the same RIF were sufficient to state a disparate impact claim. Zeman, 2023 WL 5599609 at *6.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

As set forth in the Complaint, Elon Musk completed his purchase of Twitter in late

October 2022 and immediately began laying off more than half of its workforce, including Plaintiffs. (Compl. ¶¶ 1, 6-7, 21-23, Dkt. 1). The decisions regarding which employees would be laid off were made under extremely hurried circumstances, and for thousands of employees, in just a few days by a small group of managers under Musk's close supervision. (Compl. ¶¶ 24-26, Dkt. 1). Some of these managers were brought in from other companies owned by Musk (such as Tesla) and had little (if any) knowledge about Twitter's operations. (Compl. ¶ 24, Dkt. 1). In selecting employees for layoff, little (if any) attention was given to employees' job performance, qualifications, experience, and abilities. (Compl. ¶ 24, Dkt. 1). Most of the employees whom Twitter laid off were notified of their layoff on November 4, 2022; others, including Plaintiff Ihara, were notified on November 23, 2022. (Compl. ¶ 25, Dkt. 1).

### A.  Allegations Relating to Improper Interference with FMLA Rights

Plaintiff Weinberg alleges that Twitter's mass layoff disproportionately impacted employees who had taken, or were preparing to take, family or medical leave. (Compl. ¶ 27, Dkt. 1). Weinberg had previously taken ten weeks of FMLA leave to care for her child, who is disabled, and had returned from her leave less than a month before she was informed of her layoff on November 4, 2022. (Compl. ¶¶ 28-29, Dkt. 1). Weinberg alleges that approximately 60% of employees who were on leave at the time of the RIF were notified that they were being laid off, compared to approximately 51% of employees overall. (Compl. ¶ 30, Dkt. 1). She further alleges that most of the employees who were on leave but not terminated during the RIF were no longer employed by the company following Musk's subsequent ultimatum that employees agree to being "extremely hardcore" and "working long hours at high intensity" to remain employed at Twitter. (Compl. ¶ 30, Dkt. 1). Weinberg brings an ADEA claim on behalf of herself and on behalf of all employees who were laid off by Twitter following Musk's acquisition of the company and who had recently taken, or were preparing to take, family or medical leave under the FMLA. (Compl. ¶ 8, Dkt. 1).

### B.  Allegations Relating to Sex Discrimination Under Title VII

Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger allege that Twitter's mass

layoff affected women significantly more than men. (Compl. ¶¶ 27, 43, Dkt. 1). Amid the layoff, the media reported on widely circulated pictures of Twitter employees which revealed a stark contrast in the number of women who appeared to be employed at the company before and after Musk's acquisition. (Compl. ¶ 31, Dkt. 1). Spreadsheets showing which Twitter employees in the United States were retained and which were laid off on November 4, 2022 reveal that Twitter laid off approximately 57% of its female employees, as compared to 47% of its male employees. (Compl. ¶¶ 32-36, Dkt. 1). Dr. Mark Killingsworth, a professor in the Department of Economics at Rutgers University, performed a chi square analysis on this data and determined that the odds of this disparity resulting from chance alone was .00000000000001 (or, put another way, about 9.977 out of 100 trillion). (Compl. ¶ 37, Dkt. 1).

Plaintiffs further allege that this disparity cannot be justified as an effort to retain more employees in engineering-related roles. (Compl. ¶ 38, Dkt. 1). Data from Twitter's spreadsheet showed that the sex-based disparity was even starker when only engineering roles were considered. (Compl. ¶ 39, Dkt. 1). Dr. Killingsworth determined that this disparity was also significantly significant and that the odds that this disparity being due only to chance was .00000000000001 (or, put another way, 1.103 chances out of 100 trillion). (Compl. ¶ 40, Dkt. 1). Similarly, Plaintiffs allege that there is also a great disparity in the layoff rates between women and men in non-engineering roles. (Compl. ¶ 41, Dkt. 1.)  The spreadsheet showing the layoffs also reveals a significant sex-based disparity among non-engineering roles. (Compl. ¶ 41, Dkt. 1). According to Dr. Killingsworth, the odds that this disparity was due only to chance was .0001 (or, put another way, 2.778 chances out of 100 thousand). (Compl. ¶ 41, Dkt. 1).

Finally, Plaintiffs allege that Twitter's discriminatory conduct in the layoffs is unsurprising given the sexist, demeaning, and hostile comments that Elon Musk has made about and directed towards women. (Compl. ¶ 44, Dkt. 1). For example, it was widely publicized that Musk joked about naming a school using the acronym "TITS"; he also joked about women's breasts on Twitter, tweeted "Testosterone rocks ngl", and made clear his belief that it was more important for women to have a lot of babies than to pursue their careers. (Compl. ¶¶ 45-46, Dkt.

1). Musk also had the "w" on the sign of the corporate headquarters painted white so that the company's name appeared to be "Titter."  (Compl. ¶ 47, Dkt. 1).

### C.    Allegations Relating to Race Discrimination Under Title VII

Plaintiff Ogunsanya alleges that Twitter's mass layoff affected Black employees significantly more than white employees. (Compl. ¶¶ 27, 48, Dkt. 1). Ogunsanya further alleges that Twitter's racially discriminatory conduct is unsurprising in light of Musk's history of support for racist groups and hate speech directed at Black people, which demonstrate his discriminatory animus against Black people and which is imputed to his company. (Compl. ¶ 49, Dkt. 1). As was widely reported in the media, Musk defended Scott Adams, the creator of the comic strip "Dilbert," after Adams called Black Americans a "hate group" and suggested that white people should "get the hell away" from them. (Compl. ¶ 50, Dkt. 1).

### D.    Allegations Relating to Age Discrimination Under the ADEA

Plaintiffs Bessinger and Ihara allege that Twitter's mass layoff affected employees age fifty (50) and older significantly more than younger employees. (Compl. ¶¶ 27, 52, Dkt. 1). They allege that, based on data Twitter provided employees pursuant to the Older Workers Benefit Protection Act (OWBPA), 149 (or 60%) of the 248 employees ages fifty (50) or over employed by Twitter were laid off on November 4, 2022 (Compl. ¶¶ 53-55, Dkt. 1). By comparison, they allege that this data indicates only 54% of employees under the age of fifty (50) were laid off. (Compl. ¶ 55, Dkt. 1). Dr. Killingsworth determined that this disparity was statistically significant and that the odds of this disparity being due only to chance were .0529. (Compl. ¶ 56, Dkt. 1). Plaintiffs allege that this discrimination was willful, especially in light of Musk's history of making ageist comments, which show his discriminatory animus against older individuals and is imputed to Twitter. (Compl. ¶¶ 53-55, Dkt. 1). These comments include his statement in an interview that "I don't think we should try to have people live for a really long time" because "if they don't die, we will be stuck with old ideas and society wouldn't advance . . . [a]nd it is just impossible to stay in touch with the people if you are many generations older than them." (Compl. ¶ 59, Dkt. 1).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## III. ARGUMENT

### A. Legal Standard for Motion to Dismiss Under Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citations omitted); see also Fed R. Civ. P. 8(a)(2) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claims is and the grounds upon which it rests."). Thus, Plaintiff need only "state a claim to relief that is plausible on its face" to survive Twitter's motion to dismiss. Twombly, 550 U.S. at 555. "A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants are liable for the misconduct alleged." Morales v. Laborers' Union Loc. 304, 2012 WL 70578, at *1 (N.D. Cal. Jan. 9, 2012).

Courts follow "a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, 'plausibly give rise to an entitlement to relief.'" Fallcochia v. Saxon Mortg., Inc., 709 F.Supp.2d 860, 865 (E.D. Cal.2010) (quoting Iqbal, 556 U.S. at 679). "'Plausibility,' as it is used in Twombly and Iqbal, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. Thus, "it would be improper to dismiss a complaint 'for failing to allege certain additional facts that [Plaintiff] would need at the trial stage to support his claim.'" O'Donnell v. U.S. Bancorp Equip. Fin., Inc., 2010 WL 2198203, at *3 (N.D. Cal. May 28, 2010) (quoting Twombly, 550 U.S. at 569–70). Rather, "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

**B.      Plaintiff Weinberg Has Stated an Interference Claim Under the FMLA.**

"Employer actions that 'deter employees' participation in protected activities constitute interference or restraint with the employees' exercise of their rights." Perata v. City & Cnty. of San Francisco, 2023 WL 4537695, at *22 (N.D. Cal. July 13, 2023) (quoting Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1124 (9th Cir. 2001)). "[T]he inquiry for interference is whether the employer's conduct makes an employee 'less likely to exercise their FMLA leave rights [because] they can expect to be fired or otherwise disciplined for doing so.'" Olson v. United States by & through Dep't of Energy, 980 F.3d 1334, 1338 (9th Cir. 2020) (quoting Bachelder, 259 F.3d at 1124).[2] To state a claim for unlawful interference with an employee's rights under the FMLA, a plaintiff must allege that she (1) "took FMLA-protected leave," (2) "suffered [an] adverse employment action[]," and (3) that "the adverse action[] w[as] causally related to [the] FMLA leave." Duane v. IXL Learning, Inc., 2017 WL 2021358, at *2 (N.D. Cal. May 12, 2017).

Twitter does not dispute that Weinberg "took FMLA-protected leave" and, shortly thereafter, "suffered [an] adverse employment action[]." Instead, Twitter argues that Weinberg "has not alleged facts sufficient to support an inference that her FMLA leave was a negative factor in her selection for layoff." (Mot. To Dismiss, p. 7, L. 7-9, Dkt. 23). This ignores the numerous detailed factual allegations Weinberg offers in support of her FMLA claim and mischaracterizes her burden at this early stage of litigation.

Weinberg alleges she was terminated within one month of returning from ten weeks of FMLA leave. (Compl. ¶¶ 28-29, Dkt. 1). This "close temporal proximity between a return from

---

[2]      Twitter also argues that Weinberg's FMLA claims are lacking "in the absence of any allegation of FMLA-related animus by any RIF decisionmaker or anyone else at Twitter." (Mot. to Dismiss, p. 7, ¶¶ 15-16, Dkt. 23). However, the Ninth Circuit has made clear that "[i]n interference claims, the employer's intent is irrelevant to a determination of liability," Sanders v. City of Newport, 657 F.3d 772, 778 (9th Cir. 2011). Moreover, a factfinder could infer that Musk's demand for employees to be "extremely hardcore" and "work[] ling hours at high intensity" meant that employees who needed to be on leave close in time to when he was implementing his new vision for the company were less likely to be able to meet this exacting standard.

FMLA-protected leave and termination supports an inference of unlawful interference." Duane, 2017 WL 2021358 at *2. Indeed, "[a]t the pleading stage, the temporal proximity between [the plaintiff's] return from FMLA leave and termination is enough to support a plausible inference that [the employer] violated the FMLA." Id.; see also Xin Liu, 347 F.3d at 1137 ("[T]he proximity in time between the leave and [the plaintiff's] termination also provides supporting evidence of a connection between the two events."); Asmo v. Keane, Inc., 471 F.3d 588, 593 (6th Cir. 2006) (concluding that two-month period between employer learning of pregnancy and termination of employment supports inference of causal nexus).

Twitter contends that temporal proximity is irrelevant under the circumstances of this case because Weinberg was terminated as part of a mass layoff. Yet under the FMLA, an employer is prohibited from "us[ing] an employee's taking of FMLA leave as a '*negative factor*' in making 'adverse employment decisions.'" Banaga, 2019 WL 2451418 at *5 (emphasis added). The fact that Twitter decided to undertake a RIF does not insulate it from liability under the FMLA if, as Weinberg alleges, the company considered her decision to take FMLA leave as a "negative factor" when deciding to select her for layoff. Put another way, Twitter's decision to undertake an RIF did not give it license to discriminate against employees who took FMLA leave when choosing who to retain and who to lay off, any more than it gave Twitter license to discriminate against female, Black, or older employees in the RIF selection process. Weinberg's "termination could have been motivated by multiple reasons," but if one of those reasons was her need to take FMLA leave, then Twitter unlawfully interfered with her rights under the FMLA. Duane, 2017 WL 2021358 at *3.

In support of her allegations, Weinberg provides data indicating that employees who were on leave on November 4, 2022 were more likely to be laid off than employees who were not on leave. (Compl. ¶ 30, Dkt. 1). Twitter asserts that this data is "insufficient" because it encompasses all employees who were on leave, not just those employees who were on FMLA leave, and because Weinberg was not herself on leave when she was laid off. (Mot. to Dismiss, p. 15, L. 19). However, data illustrating Twitter's treatment of employees who were on leave – a

group which encompasses employees who were on FMLA leave – supports an inference of discrimination against employees who were on or had recently taken FMLA leave, even if the data is (at this early stage of proceedings) necessarily imperfect. See Nat'l Fair Hous. All. v. Fed. Nat'l Mortg. Ass'n, 294 F. Supp. 3d 940, 948 (N.D. Cal. 2018) (explaining that defendant's "specific contentions about alleged deficiencies in methodology go to the weight of the evidence and are not dispositive of the determination whether Plaintiff[] ha[s] adequately pled" her claim").[3] Moreover, this statistical evidence does not stand alone and must be considered in conjunction with Weinberg's other allegations regarding temporal proximity and the subsequent departure of the majority of the remaining employees on leave after Musk's ultimatum. Xin Liu, 347 F.3d at 1137 (considering evidence collectively when assessing FMLA claim). As the Court explained in one case Twitter relies upon, Stender v. Lucky Stores, Inc., even if a plaintiff's "statistics alone do not permit an inference of discrimination . . . the court may nevertheless draw such an inference if 'enough other probative evidence exists to permit [that] inference.'" 1991 WL 127073 at *5 (quoting Segar v. Smith, 738 F.2d 1249, 1283 (D.C. Cir. 1984)).

Twitter's invitation to assess the probative weight of Weinberg's preliminary statistical analysis is inappropriate at this early stage. Even if Weinberg may ultimately need to present a statistical analysis using a more analogous comparison pool to prove her claim, she is "not required . . . to produce statistical evidence" at the pleading stage – rather, "all that is required is fair notice of the claims and the grounds upon which they rest, sufficient to raise a right to relief above the speculative level." Garcia v. Country Wide Financial Corp., 2008 WL 7842104, *6 (C.D. Cal. Jan. 17, 2008); see also Garay v. Lowes Home Centers, LLC, 2017 WL 5473887, at *3 (D. Or. Nov. 14, 2017) ("[I]t would be premature to require detailed statistical evidence at the

---

[3]      Indeed, the decisions Twitter cites in support this argument all arise at later stages of litigation in very different procedural postures than this case. See White v. Wilson, 2018 WL 6175385, at *6 (C.D. Cal. Mar. 23, 2018) (considering statistical evidence in context of Defendant's summary judgment motion after previously denying Defendant's motion to dismiss); Carpenter v. Boeing Co., 456 F.3d 1183, 1188 (10th Cir. 2006) (considering statistical evidence in context of Defendant's summary judgment motion and class decertification motion "following merits discovery"); Stender v. Lucky Stores, Inc., 1991 WL 127073, at *1 (N.D. Cal. Apr. 4, 1991) (considering statistical evidence in context of summary judgment motion).

pleading stage."). Here, Plaintiff Weinberg alleges she was terminated shortly after returning from FMLA leave, that employees on leave were disproportionately affected by Twitter's layoffs on November 4, 2022, and that the majority of employees on leave who remained at Twitter after the layoffs left the company when Elon Musk issued an ultimatum which could plausibly be interpreted as inconsistent with Twitter's intent to respect employees' rights under the FMLA. These allegations are more than sufficient to state a plausible FMLA claim.

### C.   The Court Should Deny Twitter's Motion to Dismiss Plaintiff Weinberg's Class FMLA Claim

Twitter has taken the unusual step of moving to dismiss Plaintiff Weinberg's class FMLA claim even before the parties have engaged in discovery and before Plaintiffs have moved for class certification. Courts routinely hold that Rule 12(b)(6) is not an "appropriate vehicle to challenge class allegations," explaining that "the sufficiency of class allegations are better addressed through a class certification motion, after the parties have had an opportunity to conduct some discovery." Cruz v. Sky Chefs, Inc., 2013 WL 1892337, at *5 (N.D. Cal. Aug. 29, 2011). Indeed, courts in the Ninth Circuit have taken an "overwhelmingly negative" view of efforts to attack class allegations at the Rule 12 stage. King, 2021 WL 2400899, at *15; see also Slovin v. Sunrun, Inc., 2016 WL 5930631, at *2 (N.D. Cal. Oct. 12, 2016) ("Without the benefit of discovery and the demonstration of particularized arguments from both parties relating to class certification, the Court lacks the necessary information to rule on the propriety of the class allegations."). As the Court explained in Clerkin v. MyLife.Com, arguments regarding class definition are properly addressed through Rule 23(b), not Rule 12(b)(6). 2011 WL 3809912, at *3 (N.D. Cal. Aug. 29, 2011) ("[O]ther Federal Rules of Civil Procedure exist to address impertinent allegations and class certification. Thus, the use of Rule 12(b)(6) to address the same would create redundancies in the Federal Rules."); see also Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir. 1969) ("[C]ompliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim."). These procedural grounds alone are reason to reject Twitter's premature effort to litigate class certification in a motion to dismiss.

Even if this Court reaches the substance of Twitter's class arguments, dismissal at this stage is unwarranted. Courts only dismiss class allegations on a Rule 12(b) motion where they are "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." Ogola, 2014 WL 4145408 at *2; see also In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d 609, 615–16 (N.D. Cal. 2007) ("[D]ismissal of class allegations at the pleading stage should be done rarely . . . the better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery"). Courts decline to address class allegations at the Rule 12 stage even where the class allegations "are suspicious and may in fact be improper," because "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery." In re Wal-Mart Stores, Inc. Wage and Hour Litig., 505 F. Supp. 2d at 615-16.

This is not the first case where Twitter has sought to strike class allegations related to the discriminatory nature of its layoffs following Elon Musk's acquisition of the company. Twitter likewise sought to strike class allegations in Zeman, but Judge Ilston correctly rejected Twitter's arguments, finding that they were premature and questions about the scope and appropriateness of class claims were better addressed after discovery. Zeman, 2023 WL 5599609 at *7.

Here, Twitter's premature attempt to litigate class certification focuses on three purported deficiencies, none of which justify the drastic step of dismissing Plaintiff Weinberg's class allegations. First, Twitter argues that Weinberg's proposed class definition is "[f]atally [u]ncertain," such that the proposed class is not ascertainable. (Mot. to Dismiss, p. 8, L. 12). To the contrary, the proposed class consists of an objectively identifiable group of people (former Twitter employees who had recently taken or were preparing to take FMLA leave) who all suffered an objectively identifiable adverse employment action (selection for layoffs as part of the RIF). Twitter's demand for greater specificity at the pleading stage is simply unjustified. See, e.g., Seifi v. Mercedes-Benz USA, LLC, 2013 WL 2285339, *8 (N.D. Cal. May 23, 2013) ("Because the shape and form of a class action evolves only through the process of discovery, courts rarely dismiss class allegations before discovery has commenced."); Henderson v. J.M.

Smucker Co., 2011 WL 1050637, *2 (C.D. Cal. Mar. 17, 2011) ("We will not conduct a premature [] inquiry before the Parties have had an opportunity to fully ventilate all of the relevant issues with the benefit of discovery."). Twitter's argument regarding "ascertainability is best decided at the class certification stage with the benefit of more complete briefing and development of the record." TopDevz, LLC v. LinkedIn Corp., 2021 WL 3373914, at *12 (N.D. Cal. Aug. 3, 2021).

Second, Twitter rehashes its critique of the data Weinberg presents regarding the disproportionate impact of Twitter's layoffs on employees who were on leave. As recounted above, this data is relevant to Plaintiff Weinberg's individual and class allegations and Twitter's arguments to the contrary are premature. In fact, Twitter's argument illustrates why litigating the propriety of a proposed class at the pleading stage is disfavored: Twitter almost certainly possesses more precise data documenting its treatment of employees who had recently taken or were preparing to take FMLA leave, and discovery would allow this Court to determine whether Plaintiff's proposed class meets the requirements of Rule 23. This process is not an improper fishing exercise, as Twitter suggests, but the ordinary course of litigation after a plaintiff alleges plausible class claims. See Doninger, 564 F.2d at 1313 ("[T]he better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action was maintainable. And, the necessary antecedent to the presentation of evidence is, in most cases, enough discovery to obtain the material, especially when the information is within the sole possession of the defendant."); see also Vinole, 571 F.3d at 942 ("Our cases stand for the unremarkable proposition that often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.").

Finally, Twitter argues that Weinberg's class allegations should be dismissed because she lacks standing to assert claims on behalf of employees who were constructively discharged. This argument "confuse[s] the standing analysis in a class action for the class certification analysis." B.K. by next friend Tinsley v. Snyder, 922 F.3d 957, 967 (9th Cir. 2019). Notably, Twitter does not assert that Weinberg lacks standing to bring an FMLA claim. Twitter instead argues she is

not similarly situated enough to other putative members of the proposed class to bring claims on their behalf. This is a challenge to adequacy or typicality under Rule 23, not a challenge to Article III standing which calls into question this Court's subject-matter jurisdiction. See Melendres v. Arpaio, 784 F.3d 1254, 1262 (9th Cir. 2015) ("[O]nce the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded, and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met.") (quoting 1 William B. Rubenstein, Newberg on Class Actions § 2:6 (5th ed. 2011)). This is another argument properly resolved at the class certification stage; if this Court agrees that Weinberg is an unsuitable class representative under Rule 23, Plaintiffs could then seek leave to appoint another named plaintiff or to create subclasses, as routinely occurs in class litigation. See, e.g., Hensley-Maclean v. Safeway, Inc., 2015 WL 3956099, at *5 (N.D. Cal. June 29, 2015) (concluding, where initial named plaintiff had Article III standing, that "there is no sound basis for denying leave to amend [to appoint a new class representative] at this juncture, given that the jurisdiction of the Court was properly invoked in the first instance"); Sueoka v. United States, 101 F. App'x 649, 654 (9th Cir. 2004) ("Because the record demonstrates the existence of numerous persons holding claims typical of [the proposed] subclasses . . . leave to amend should be granted to add named plaintiffs who are both typical and can adequately represent each of those subclasses."). Twitter provides no compelling reason to prematurely dismiss Weinberg's class FMLA claim.

### D.   Plaintiffs Have Stated Claims for Sex and Race Discrimination Under Title VII and Age Discrimination Under the ADEA.

#### 1.   Plaintiffs have pleaded facts sufficient to support plausible claims of intentional discrimination.

To prove a Title VII claim on a theory of disparate treatment, "a plaintiff must provide evidence that 'give[s] rise to an inference of unlawful discrimination.'" Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981)). A plaintiff may establish disparate treatment either through direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic, see

McGinest v. GTE Service Corp., 360 F.3d 1103, 1121-22 (9th Cir. 2004), or "through circumstantial evidence, following the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)," Lyons, 307 F.3d at 1112. A plaintiff establishes a prima facie case of disparate treatment under McDonnell Douglas by showing that: "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." Best v. California Dep't of Corr., 21 F. App'x 553, 558 (9th Cir. 2001). The same standard applies to age discrimination claims arising under the ADEA. See Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008) (applying the McDonnel Douglas burden-shifting framework to an ADEA claim).

To state a disparate treatment claim, a plaintiff is only required to plead enough facts to plausibly allege that "an employer has treated [her] less favorably than others because of a protected trait." Wood, 678 F.3d at 1081. A plaintiff "need not plead a McDonnell Douglas prima facie case . . . to survive a motion to dismiss." Haney v. United Airlines, Inc., 2016 WL 80554, at *3 (N.D. Cal. Jan. 7, 2016). All that is required are factual allegations sufficient to show that her legal claims "have substantive plausibility." Id. However, "even though [a plaintiff] does not need to establish *prima facie* cases for his or her claims at [the pleading stage], the court will look to the required elements to determine whether the facts that are alleged state plausible claims for relief." Lindsey v. Claremont Middle Sch., 2012 WL 5988548, at *2 n.3 (N.D. Cal. Nov. 29, 2012). "[W]here a plaintiff pleads a plausible prima facie case of discrimination, the plaintiff's complaint will be sufficient to survive a motion to dismiss." Sheppard v. David Evans & Assoc., 694 F.3d 1045, 1050 (9th Cir. 2012).

Here, Plaintiffs have pled all facts necessary to establish the four elements of a prima facie case of disparate treatment under Title VII and the ADEA. First, Plaintiffs have all pleaded that they are members of a protected class: Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger have alleged that they are female and were discriminated against by Twitter on the basis of their sex, Plaintiff Ogunsanya has alleged that he is Black and was discriminated against

by Twitter on the basis of his race, and Plaintiffs Bessinger and Ihara have alleged that they are age fifty (50) or older and were discriminated against by Twitter on the basis of their age. (Compl. ¶¶ 3-5, Dkt. 1). Second, Plaintiffs have all identified their positions at Twitter and pleaded that their job performance met Twitter's expectations at the time of the layoffs. (Compl. ¶¶ 9-15, Dkt. 1). Third, Plaintiffs have all pleaded that they suffered adverse employment actions when they were laid off by Twitter. (Compl. ¶ 25, Dkt. 1). Fourth, Plaintiffs have all pleaded that they were treated less favorably than similarly situated employees who were not members of their respective protected classes. (Compl. ¶¶ 28-59, Dkt. 1). Accordingly, Plaintiffs have met their burden at this stage of the proceedings, which is "not onerous." <u>Burdine</u>, 450 U.S. at 253.

Plaintiffs have also presented supporting factual allegations that "raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." <u>O'Donnell</u>, 2010 WL 2198203 at *3. Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger alleged that they and more than 1,200 other women were laid off by Twitter, and they have set forth a preliminary statistical analysis indicating that the layoffs affected women at a highly disproportionate rate as compared to men at Twitter, a disparity which an experienced labor economist deemed extremely statistically significant. (Compl. ¶¶ 31-43, Dkt. 1). Plaintiffs Bessinger and Ihara presented a similar preliminary statistical analysis demonstrating the impact of the layoffs on older employees at Twitter. (Compl. ¶¶ 52-57, Dkt. 1). Plaintiff Ogunsanya similarly alleged that Black employees were statistically more likely to be laid off. (Compl. ¶ 48, Dkt. 1). All Plaintiffs alleged that Twitter acted with animus towards their respective protected classes, citing as evidence Elon Musk's offensive public statements and actions regarding women, Black people, and older workers.  (Compl. ¶¶ 44-47, 49-51, 58-59, Dkt. 1). Plaintiffs have clearly "pleaded enough facts to state a claim for relief that is plausible on its face." <u>Borja-Valdes v. City & Cnty. of San Francisco</u>, 2015 WL 5522287, at *3 (N.D. Cal. Sept. 18, 2015).

In response, Twitter contends that Plaintiffs' disparate treatment claims should be dismissed because Plaintiffs have failed to allege they were performing their jobs satisfactorily and failed to allege facts indicating Twitter treated them differently than similarly situated

employees. As described above, these arguments are belied by the complaint, which contains such allegations. Twitter also diminishes the probative value of Plaintiffs' statistical analyses, and points to other evidence that might ultimately be relevant to Plaintiffs' claims, but these arguments "disregard[] the proce[]dural posture of the case: plaintiffs need not prove every assertion to bring suit or to survive a Rule 12(b)(6) motion to dismiss." Mi Pueblo San Jose, Inc. v. City of Oakland, 2006 WL 2850016, at *4 (N.D. Cal. Oct. 4, 2006). Twitter's "specific contentions about alleged deficiencies in methodology go to the weight of the evidence and are not dispositive of the determination whether Plaintiff[] ha[s] adequately pled" her claim." Nat'l Fair Hous. All., 294 F. Supp. at 948. The Supreme Court has made clear that, at this stage, there is no minimum threshold level of statistical significance which mandates finding (or not finding) that a prima facie case has been established. See Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 998 n.3 (1988) ("[W]e have not suggested that any particular number of 'standard deviations' can determine whether a plaintiff has made out a prima facie case in the complex area of employment discrimination.").[4]

Moreover, while Twitter faults Plaintiffs' for purportedly failing to provide sufficiently detailed descriptions of similarly situated employees who were treated more favorably than they were, courts in this Circuit have made clear that this kind of factual detail is unnecessary at this stage. See, e.g., Marziano v. Cty. of Marin, 2010 WL 3895528, at *9 (N.D. Cal. Oct. 4, 2010) (confirming that "a general statement that similarly situated employees were treated more favorably . . . with respect to a specific employment action" is enough to survive a motion to dismiss); Cooper v. Cate, 2011 WL 5554321, at *11 (E.D. Cal. Nov. 15, 2011) (denying a motion to dismiss in an age discrimination case where plaintiff alleged only that the defendant "treated employees with [plaintiff's] rank and classification who were substantially younger than

---

[4]       Twitter relies heavily on Strifling v. Twitter, Inc., Case No. 22-cv-07739-JST, slip op. (N.D. Cal. May 8, 2023), for the proposition that Plaintiffs have not adequately pled sufficient facts. Given U.S. Supreme Court and Ninth Circuit precedent, Plaintiffs respectfully disagree with the Strifling decision. Nonetheless, should the Court agree that additional detailed factual allegations are required, the Court should allow Plaintiffs leave to file an amended complaint.

she more favorably that it treated her, including but not limited to, not redirecting them to out of class positions"); Egbukichi v. Wells Fargo Bank, NA, 2017 WL 1199737, at *4 (D. Or. Mar. 29, 2017) ("The Court also rejects Defendant's argument that Plaintiffs must specifically identify the purported similarly qualified white applicants at this stage of the litigation. Although potentially important at summary judgment or trial, the Court finds such specificity is not required in the complaint at the pleading stage.").

Twitter also asks this Court to disregard Musk's discriminatory comments, arguing that "they cannot support an inference of intent because they have no nexus to the RIF decisions or Plaintiffs." (Mot. to Dismiss, p. 13, L. 9-10). But it is rational to conclude that "strongly held and repeatedly voiced wishes of the king, so to speak, likely became well known to those courtiers who might rid him of a bothersome underling." Travers v. Flight Servs. & Sys., Inc., 737 F.3d 144, 147 (1st Cir. 2013) (reversing summary judgment on retaliation claim). Again, at this stage, Plaintiffs need not prove their entire case. See Usher v. O'Reilly Automotive, Inc., 2014 WL 12597587, at *5 (C.D. Cal. May 27, 2014) (denying a motion to dismiss where employer argued that certain comments were "stray remarks" and explaining that "while the factual allegations may not show that the comments made to Plaintiff were 'directly tied' to Plaintiff's termination, '[c]omments suggesting that the employer may have considered impermissible factors are clearly relevant to a disparate treatment claim.") (quoting Horn v. Cusman & Wakefield Western, 72 Cal. App. 4th 798, 809–10 (1999)). As the new owner and CEO of Twitter, Musk "set[] the tone and mission for his subordinates, many of whom presumably consider it an important part of their jobs to figure out and deliver what the CEO wants." Travers, 737 F.3d at 147. It is certainly plausible that Musk's discriminatory animus influenced the hurried layoff decisions made by his subordinates. Regardless, this allegation cannot be dismissed at this stage: his discriminatory animus, and the extent to which it influenced the RIF decisions, are fact issues to be developed during discovery and resolved at summary judgment or trial. Id. at 148.

Plaintiffs have alleged all elements of a prima facie disparate treatment claim as well as supporting facts including statistical and anecdotal evidence which give rise to an inference of

discriminatory treatment. These allegations are far more detailed than the kinds of "wholly conclusory" allegations that leave a discrimination complaint vulnerable to dismissal. Cattoche v. United Airlines, Inc., 2022 WL 3702098, at *1 (N.D. Cal. Aug. 26, 2022), aff'd, 2023 WL 6803540 (9th Cir. Oct. 16, 2023) (dismissing race and gender discrimination claims where complaint "alleges in a wholly conclusory fashion that [the plaintiff] was 'treated less favorably than her non-female' and 'non-African American counterparts.'"). Twitter's motion to dismiss Plaintiffs' disparate treatment claims should be denied.

**2.      Plaintiffs have pleaded facts sufficient to support plausible disparate impact claims.**

Under both Title VII and the ADEA, "to prevail on a disparate impact claim . . . a plaintiff must prove that a challenged employment policy or practice, while facially neutral, has a disparate impact on certain employees 'because of their membership in a protected group.'" Katz v. Regents of the Univ. of California, 229 F.3d 831, 835 (9th Cir. 2000). Plaintiffs establish a prima facie disparate impact claim if they "(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact." Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1190 (9th Cir. 2002). "Plaintiffs need not prove the prima facie elements to survive a motion to dismiss, but must plead the general elements to make a claim facially plausible." Lee v. Hertz Corp., 330 F.R.D. 557, 561 (N.D. Cal. 2019). As with disparate treatment claims, the burden on plaintiffs at the pleading stage is "not onerous," and "[t]he plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination," Moussouris v. Microsoft Corp., 2016 WL 6037978, at *3 (W.D. Wash. Oct. 14, 2016).

Plaintiffs have met their burden here by plausibly alleging all elements of a prima facie disparate impact claim. First, Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger allege that Twitter's mass layoff affected women significantly more than men. (Compl. ¶¶ 27, 31-43, Dkt. 1); Plaintiff Ogunsanya alleges that Twitter's mass layoff affected Black employees

significantly more than white employees. (Compl. ¶¶ 27, 48, Dkt. 1); and Plaintiffs Bessinger

and Ihara allege that Twitter's mass layoff affected employees ages fifty (50) and older

significantly more than younger employees. (Compl. ¶¶ 27, 52-56, Dkt. 1). Plaintiffs all

identified the RIF which occurred following Musk's acquisition of the company, and the rushed

decision-making process led by a small group of managers under Musk's supervision who lacked

knowledge of Twitter's operations and who gave little if any consideration to employees'

performance, qualifications, experience, and abilities, as the "specific employment practice[s]"

giving rise to their disparate impact claim. (Compl. ¶¶ 23-27, Dkt. 1). And, as detailed above,

Plaintiffs have alleged substantial supporting factual allegations, including preliminary statistical

analyses and evidence of Musk's discriminatory animus, which amply support an inference of a

causal relationship. (Compl. ¶¶ 44-47, 49-51, 58-59, Dkt. 1). Accordingly, this Court should

deny Twitter's motion to dismiss the Title VII and ADEA disparate impact claims.

> i.   <u>Plaintiffs have challenged a particular employment practice with
> more than enough specificity.</u>

Twitter contends that all Plaintiffs' disparate impact claims are insufficient because they

have not identified a "particular employment practice" that resulted in any disparity. However,

"[t]he Ninth Circuit has concluded that a reduction in force can be a specific employment

practice that supports a disparate impact claim." <u>Tsur v. Intel Corp.</u>, 2022 WL 17985573, at *13

(D. Or. Dec. 29, 2022) (citing <u>Pottenger v. Potlach Corp.</u>, 329 F.3d 740, 749 (9th Cir. 2003)).

<u>Pottenger</u> conclusively disposes of this argument: there, the Ninth Circuit recognized that a

"disparate impact claim must challenge a specific business practice," before holding

unequivocally that a "RIF would constitute such a practice." <u>Pottenger</u>, 329 F.3d at 740.[5]

---

[5]       Relying on out-of-circuit cases including <u>Davis v. D.C.</u>, 925 F.3d 1240, 1250 (D.C. Cir.
20019), and <u>Gilbreath v. Brookshire Grocery Co.</u>, 400 F. Supp. 3d 580, 591 (E.D. Tex. Aug. 21,
2019), Twitter asserts that the complaint must go beyond the general concept of a reduction-in-
force to identify an actionable employment practice. These cases are at odds with the Ninth
Circuit in <u>Pottenger</u>. Moreover, the cases that Twitter relies on were decided at the summary
judgment stage rather than the motion to dismiss stage. In <u>Davis</u>, the D.C. Circuit remanded the
case to the district court to determine whether the way in which the employer implemented a
layoff led to a disparate impact. <u>See</u> <u>Davis</u>, 925 F.3d at 1244. Likewise, in <u>Gilbreath</u>, it was only

Moreover, Plaintiffs allegations go beyond the mere existence of the RIF. Plaintiffs allege that "[t]he decisions regarding which employees would be laid off were made under extremely hurried circumstances, with little if any regard given to employees' job performance, qualification, experience, and ability," and that "the layoff decisions were made quickly by a small group of managers, under close supervision of Musk." (Compl. ¶¶ 24, 26, Dkt. 1). The Ninth Circuit has held that "an employer's facially neutral practice of committing employment decisions to the subjective discretion of supervisory employees [is] a specific employment practice properly subject to a disparate impact analysis." Rose, 902 F.2d at 1424; see also Pottenger, 329 F.3d at 749 (holding that a "policy of committing employment decisions in a RIF to the subjective discretion of its managers constitute[s] a specific employment practice").

Twitter also contends that Plaintiffs' allegations regarding these policies are not sufficiently specific. Twitter, for example, compares this case to Enoh v. Hewlett Packard Enterprise Co., where the court dismissed a complaint alleging that "HP allowed an overwhelmingly Caucasian group of selectors to use a 'hazy' selection process for its employment decisions." 2018 WL 3377547, at *14 (N.D. Cal. July 11, 2018). Yet the allegations in Plaintiffs' complaint here are far more specific than those in Enoh, alleging concrete details about the rushed process, the decisionmakers' lack of familiarity with Twitter's operations, and their failure to consider relevant job performance metrics. Twitter also relies on Freyd v. University or Oregon, 990 F.3d 1211 (9th Cir. 2021), but that case actually supports Plaintiffs' argument. In Freyd, the Ninth Circuit acknowledged that the plaintiff in fact **had** challenged a specific employment practice by challenging the university's practice of providing retention raises without analyzing relevant factors like merit and seniority to determine whether other comparable faculty also deserved raises. Id. Here, Plaintiffs likewise alleged that Twitter declined to consider relevant factors in making layoff selections such as experience and abilities. (Compl. ¶¶ 24-26, Dkt. 1). Similarly, Twitter's reliance on Stout v. Potter, 276 F.3d 1118, 1121-

---

after discovery, on summary judgment, that the court had determined that plaintiffs had not identified an employment practice beyond the reduction in force to cut costs.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

22 (2d Cir. 2002), is unavailing. <u>Stout</u> has nothing to say about the specificity of pleadings, as it was decided at the summary judgment stage. <u>See id.</u> Moreover, the court in <u>Stout</u> considered the validity and probative value of the plaintiff's statistical analysis, which would be inappropriate at the motion to dismiss stage.[6] Plaintiffs have more than met their burden of identifying a particular employment practice with the specificity required at this early stage.

> ii.    <u>Plaintiffs Weinberg, Gongora, Steele, Sills, and Bessinger have stated plausible disparate impact sex discrimination under Title VII.</u>

Twitter asks this Court to disregard all of Plaintiff Weinberg, Gongora, Steele, Sills, and Bessinger's statistical evidence in support of their sex discrimination disparate impact claim because of minor discrepancies in how that data was reported in different parts of the complaint. Specifically, Twitter contends that minor variations in what percentages of female employees, engineers, and non-engineers Plaintiffs allege were fired – variations which in no way contradict Plaintiffs' allegation that the data indicates "women were far more likely than men to be laid off from Twitter" (Compl. ¶ 43, Dkt. 1) – render the entire disparate impact claim implausible.

However, Twitter's argument misses the mark. To that end, it is unnecessary, and inappropriate for the court to consider the validity of a statistical analysis at the pleading stage of a disparate impact case. <u>See, e.g.</u>, <u>Chaidez v. Ford Motor Company</u>, 937 F.3d 998, 1007 (7th Cir. 2019) (The plaintiff "for [his] part, will need to utilize the discovery process to support [his] allegations with statistical and comparative evidence."); <u>Karpe v. Chao</u>, 416 F. Supp. 3d 1021, 1029 (S.D. Cal. 2019) ("Indeed, Plaintiff 'is not required at the pleading stage to produce statistical evidence proving a disparate impact [because] . . . all that is required is fair notice of the claims and the grounds upon which they rest, sufficient to raise a right to relief above the speculative level.'"). While Plaintiffs will need to present sufficient statistical evidence at

---

[6]    <u>See, e.g.</u>, <u>Chaidez v. Ford Motor Company</u>, 937 F.3d 998, 1007 (7th Cir. 2019) (The plaintiff "for [his] part, will need to utilize the discovery process to support [his] allegations with statistical and comparative evidence."); <u>Karpe v. Chao</u>, 416 F. Supp. 3d 1021, 1029 (S.D. Cal. 2019) ("Indeed, Plaintiff 'is not required at the pleading stage to produce statistical evidence proving a disparate impact [because] . . . all that is required is fair notice of the claims and the grounds upon which they rest, sufficient to raise a right to relief above the speculative level.'").

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

summary judgment and/or trial, after the Parties have engaged in discovery, Plaintiffs cannot be held to this standard now. Rather, they only need to show that it is plausible that the layoff had a disparate impact on women, Black employees, and employees age fifty (50) and older, and they should not be punished for pleading facts related to their preliminary statistical analysis. See Liu v. Uber Techs, Inc., EEOC Amicus Brief, Case No. 22-16507, Dkt. 14, at 24-25 (9th Cir. Apr. 3, 2023) (citing Meyer v. Bear Rd. Assocs., 124 F. App'x. 686, 688 (2d Cir. 2005) (holding plaintiffs plausibly alleged that challenged policy "actually or predictably leads to" disparate impact)); Lee v. Hertz Corp., 330 F.R.D. 557, 561 (N.D. Cal. 2019) (complaint adequately alleged that employer policy would have a disparate impact on Latinos where it did not allege any facts regarding actual Latino applicants denied jobs, but instead alleged that Latinos were convicted of crimes more frequently than White people and that employer disqualified applicants with criminal histories); Nat'l Fair Hous. All. v. Travelers Indem. Co., 261 F. Supp. 3d 20, 34 (D.D.C. 2017)).

The above notwithstanding, even assuming specific statistical data were required at the pleading stage, rather than reflecting mutually incommensurate factual assertions, the variations in Plaintiffs' preliminary statistical analysis result from slightly different methods of analysis, as reflected in the slightly different denominators reported in the narrative data summary (Compl. ¶¶ 39-41, Dkt. 1) and in the summary chart (Compl. ¶ 42, Dkt. 1). As such, Twitter's argument reflects yet another premature attack on Plaintiffs' statistical methodologies.

The nature of the "contradictory allegations" at issue in the cases Twitter relies on illustrate the deficiencies in its own argument. For example, in Kennedy v. Bank of America, N.A., the plaintiff "offer[ed] a mixed bag of contradictory fact allegations as to when he believes the statute of limitations should have been triggered," alleging both that he signed documents for a loan in 2006 but also that he did not become aware of the terms of the loan until years later. 2012 WL 1458196, at *3 (N.D. Cal. Apr. 26, 2012). In Marchioli v. Pre-employ.com, the court denied the plaintiff further leave to amend his complaint (after previously granting leave to amend) because the proposed amendment would "directly contradict[] representations contained

in his earlier pleadings," rendering the proposed curative amendments "inherently implausible." 2017 WL 8186761, at *19 (C.D. Cal. June 30, 2017). And in <u>Kobayashi v. McMullin</u>, the only factual allegation supporting the plaintiff's fraud claim was irreconcilable with another allegation describing the defendant's behavior. 2022 WL 3137958, at *38 (C.D. Cal. May 31, 2022), <u>report and recommendation adopted as modified</u>, 2022 WL 3226169 (C.D. Cal. Aug. 8, 2022).

By contrast, Plaintiffs here presented two slightly different analyses of the same data which produced results that pointed in the same direction and which both supported Plaintiffs' broader factual allegations and legal claims. That different analyses might produce slightly different top-line results in no way calls into question the validity of the underlying data or the plausibility of the inference of discrimination Plaintiffs assert. At this stage, what matters is that all the statistics contained in Plaintiffs' complaint support rather than detract from its allegation of disparate impact. Accordingly, these data points are no reason to dismiss Plaintiffs' claim.[7]

### iii.   Plaintiffs Bessinger and Ihara have stated plausible disparate impact claims under the ADEA.

Twitter argues that Plaintiffs Bessinger and Ihara have failed to state a disparate impact claim because the ADEA "does not recognize a disparate impact claim predicated on disparities for a 'subgroup' of older workers who are age 50 or older." (Mot. to Dismiss, p. 18, ¶¶ 6-7, Dkt. 23). However, Judge Ilston recently rejected this exact argument by Twitter. <u>Zeman</u>, 2023 WL 5599609, at *5. In doing so, she correctly noted that the ADEA's provisions regarding disparate treatment and disparate impact both prohibit discrimination because of any individual's age, and "read[ing] the disparate treatment provision to prohibit discrimination based on a class of individuals aged forty and over rather than based on age would contradict both the plain language of the statute and the Supreme Court's holding in <u>O'Connor</u>." <u>Id.</u> Thus, she held that the plaintiff's ADEA disparate impact claim for a potential class of Twitter employees aged 50

---

[7]    If this Court disagrees, Plaintiffs request leave to amend to resolve this purported inconsistency. <u>See</u> <u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009) ("Dismissal without leave to amend is improper unless it is 'clear' that 'the complaint could not be saved by any amendment.'") (quoting <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 692 (9th Cir. 2001)).

1   and older was cognizable. Id.; see also Fox v. Bonneville Admin., 243 F.3d 547 (9th Cir. 2000)

2   (unreported case) (stating that allegations in plaintiffs' class complaint that company's policy

3   had a disparate impact on workers over 50 years old were sufficient to state a disparate impact

4   claim); O'Brien v. Caterpillar, Inc., 900 F.3d 923, 929-30 (7th Cir. 2018) (recognizing potential

5   disparate impact claims for a group of employees age 55 and older); Karlo v. Pittsburgh Glass

6   Works, LLC, 849 F.3d 61, 70-81 (3rd Cir. 2017) (holding that age discrimination disparate

7   impact claims are not limited to 40-and-older comparisons, and can be based on subgroups).[8]

8       Moreover, notwithstanding Twitter's arguments to the contrary, as explained supra in

9   Section III(D)(2)(ii), Bessinger and Ihara are not required to plead statistical evidence surpassing

10  some magical threshold to state a plausible disparate impact claim. Bessinger and Ihara's

11  allegations, including their preliminary statistical analysis, more than meets this standard.[9]

12  **IV.   CONCLUSION**

13      For the foregoing reasons, the Court should deny Twitter's Motion to Dismiss. The Court

14  should also reject Twitter's request for dismissal of Plaintiff Weinberg's class claim. Discovery

15  will determine whether similar individuals indeed exist for whom Plaintiff Weinberg may seek to

16  have this Court certify a class.

---

[8]    See also Cerjanic v. FCS USA, LLC, 2018 WL 3729063, at *5-6 (E.D. Mich. Aug. 6, 2018) (denying motion to dismiss disparate impact age discrimination claim for a group of employees age 55 and older); Mahler v. Judicial Counsel of Cal., 67 Cal.App.5th 82, 126 (2021) (finding that disparate impact age discrimination claims under California state law are not limited to forty-and-other comparisons); Graffam v. Scott Paper Co., 848 F. Supp. 1, 3-5 (D. Maine 1994) (holding that a subgroup of employees age 50 and older was a proper statistical analysis to support a disparate impact age discrimination claim); Finch v. Hercules, Inc., 865 F. 1104, 1129-30 (D. Del. 1994) (employee could seek to prove disparate impact age claims for subgroup of employees age 50 and older or age 55 and older).

[9]    Twitter also argues, incorrectly, that Bessinger and Ihara's claims fail because they have not specifically alleged how old they are. Bessinger and Ihara expressly pleaded that they "are age fifty (50) or older" and "entitled to the protections of the ADEA," which is more than sufficient to put Twitter on notice of the nature of their ADEA claims. (Compl. ¶ 5, Count IV, Dkt. 1). Twitter's argument hearkens back to the "tyranny of formalism" that the modern federal rules were "designed to avoid." Darling Int'l, Inc. v. Baywood Partners, Inc., 2007 WL 2904035, at *2 (N.D. Cal. Oct. 2, 2007) (quoting Wright & Miller, Fed. Prac. & Proc. § 1491).

1

Respectfully submitted,

2

3

NHU WEINBERG, on behalf of herself and all
others similarly situated, SAMANTHA

4

GONGORA, JULIA STEELE, OMOLADE
OGUNSANYA, NANCI SILLS, KRISTA

5

BESSINGER, and IKUHIRO IHARA,

6

7

By their attorneys,

8

/s/ Shannon Liss-Riordan_____

9

Shannon Liss-Riordan, SBN 310719
Thomas Fowler (*pro hac vice* forthcoming)

10

LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000

11

Boston, MA 02116
(617) 994-5800

12

Email:  sliss@llrlaw.com;
tfowler@llrlaw.com

13

14

Dated:        February 16, 2024

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that a true and accurate copy of this document was served on counsel for Defendant Twitter, Inc. and X Corp. via the CM/ECF system on February 16, 2024.


/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT